No. 21-1043

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

PLANNED PARENTHOOD SOUTH ATLANTIC; JULIE EDWARDS,
on her behalf and on behalf of all others similarly situated,

*Plaintiffs-Appellees*,

v.

THOMAS CLARK PHILLIP, JR., in his official capacity as Acting
Director, South Carolina Department of Health and Human Services,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of South Carolina (Columbia)
The Honorable Mary G. Lewis
Case No. 3:18-cv-02078-MGL

**OPENING BRIEF FOR APPELLANT
THOMAS CLARK PHILLIP JR.**

KELLY M. JOLLEY
ARIAIL B. KIRK
JOLLEY LAW GROUP, LLC
P.O. Box 50529
Columbia, SC 29250
(803) 809-6500
kjolley@jolleylawgroup.com
akirk@jolleylawgroup.com

JOHN J. BURSCH
BURSCH LAW, PLLC
9339 Cherry Valley Ave SE #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

*Attorneys for Defendant-Appellant*

# CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Defendant-Appellant Thomas Clark Phillip Jr.[1] makes these disclosures:

1. Is party a publicly held corporation or other publicly held entity?     No.

2. Does party have any parent corporations? No.

3. Is 10% or more of the stock of a party owned by a publicly held corporation or other publicly held entity?     No.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     No.

5. Is party a trade association?     No.

6. Does this case arise out of a bankruptcy proceeding? No.

7. Is this a criminal case in which there was an organizational victim?     No.

Dated: March 29, 2021

/s/ John J. Bursch
John J. Bursch
*Attorney for Defendant-Appellant*

---

[1] On March 26, 2021, this Court substituted Thomas Clark Phillip Jr., Acting Director of the South Carolina Department of Health and Human Services, for Joshua Baker, former Director of the South Carolina Department of Health and Human Services, as a party to this case. This brief refers to each as "the Director."

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .............................................i

TABLE OF AUTHORITIES.................................................................iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE .................................................................2

    A.    Statutory background ...........................................................2

           1.    Congress passes the Medicaid Act to fund state efforts to provide free/low-cost medical services. ..........2

           2.    Congress adds any-qualified-provider provision. ..........3

           3.    South Carolina creates procedures and remedies for excluded providers. ....................................................4

    B.    Factual background ..............................................................5

           1.    South Carolina deems Planned Parenthood unqualified. .....................................................................5

           2.    Planned Parenthood and a client sue in federal court; Planned Parenthood eventually files administrative appeal. ..................................................6

    C.    Procedural history.................................................................7

           1.    District court grants preliminary injunction.................7

           2.    This Court notes 5-1 circuit split and affirms. ..............7

           3.    District court grants summary judgment for Plaintiffs, mooting pending certiorari petition. ...........9

           4.    Sitting en banc, Fifth Circuit changes course and holds any-qualified-provider provision does *not* create a private right of action. ...................................10

5.    District court enters permanent injunction, and the Director appeals.................................................11

SUMMARY OF ARGUMENT .................................................12

ARGUMENT .................................................12

I.    Law of the case does not prevent the Court from revisiting the demonstrably wrong rulings in the prior panel opinion. .............12

   A.    For purposes of law of the case, preliminary-injunction appeals resolve preliminary questions about likelihood of success on the merits—not ultimate legal issues............14

   B.    When interpreting a federal statute, a judge-made doctrine should not trump Congress's intent. .....................18

   C.    When applying binding Supreme Court holdings, a judge-made doctrine should not prevent courts from correcting their own mistakes. .............................20

II.   As the Fifth Circuit's en banc decision explains, the panel opinion is demonstrably wrong on the merits. ...............22

   A.    The panel misinterpreted *O'Bannon*'s holding that a Medicaid beneficiary has no right to challenge a state's determination that a provider is unqualified......................22

   B.    By applying the now defunct *Blessing* factors and the repudiated *Wilder* decision, the panel misapplied the Supreme Court's decisions in *Gonzaga* and *Armstrong*.......27

CONCLUSION .................................................31

REQUEST FOR ORAL ARGUMENT .................................................32

CERTIFICATE OF COMPLIANCE.................................................33

CERTIFICATE OF SERVICE.................................................34

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) .............................................................. 30

*American Canoe Association v. Murphy Farms, Inc.,*
  326 F.3d 505 (4th Cir. 2003) ...................................... passim

*Arizona v. California,*
  460 U.S. 605 (1983) .............................................................. 19

*Armstrong v. Exceptional Child Center, Inc.,*
  575 U.S. 320 (2015) ................................................... 2, 29, 30

*Baker v. Planned Parenthood South Atlantic,*
  141 S. Ct. 550 (2020) ....................................................... 9, 10

*Benson Hotel Corp. v. Woods,*
  168 F.2d 694 (8th Cir. 1948) ............................................. 16

*Blessing v. Freestone,*
  520 U.S. 329 (1997) ................................................................ 7

*Capital Investors Company v. Executors of Morrison's Estate,*
  584 F.2d 652 (4th Cir. 1978) ...................................... passim

*Choice Hotels International, Inc. v. Patel,*
  236 F. App'x 868 (4th Cir. 2007) ...................................... 15

*City of Council Bluffs v. Omaha & C.B. Street Railway Company,*
  9 F.2d 246 (8th Cir. 1925) .................................................. 16

*DeLong Equipment Company v. Washington Mills Electro Minerals Corp.,*
  990 F.2d 1186 (11th Cir. 1993) ......................................... 20

*DiLaura v. Power Authority of State of New York,*
  982 F.2d 73 (2d Cir. 1992) ........................................... 16, 21

*Does* v. *Gillespie*,
867 F.3d 1034 (8th Cir. 2017)...................................................... passim

*Douglas v. Independent Living Center of Southern California, Inc.*,
565 U.S. 606 (2012).........................................................................2

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020)............................................................17

*Gee v. Planned Parenthood of Gulf Coast, Inc.*,
139 S. Ct. 408 (2018)......................................................................32

*Gonzaga University v. Doe*,
536 U.S. 273 (2002).......................................................20, 27, 28, 29

*Graden v. Conexant System Inc.*,
496 F.3d 291 (3d Cir. 2007) ...............................................................18

*Heath v. College of Charleston*,
No. 2:17-CV-01792-PMD-JDA, 2018 WL 3353063 (D.S.C. June 15,
2018)..........................................................................................16

*Heath v. College of Charleston*,
No. CV 2:17-1792-PMD-JDA, 2018 WL 3344654 (D.S.C. July 9,
2018)..........................................................................................16

*Homans v. City of Albuquerque*,
366 F.3d 900 (10th Cir. 2004)..............................................................15

*Hopwood v. State of Texas*,
236 F.3d 256 (5th Cir. 2000).................................................................20

*Howe v. City of Akron*,
801 F.3d 718 (6th Cir. 2015)..................................................................17

*Hunter v. Atchison, T. & S. F. Railway Company*,
188 F.2d 294 (7th Cir. 1951)..................................................................15

*Kumar v. Republic of Sudan*,
880 F.3d 144 (4th Cir. 2018)..................................................................18

*L.J. v. Wilbon*,
    633 F.3d 297 (4th Cir. 2011)................................................................17

*Market American, Inc. v. Rossi*,
    No. 1:97CV00891, 1999 WL 1939247 (M.D.N.C. Apr. 15, 1999) ........17

*Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16,*
    *1978*,
    954 F.2d 1279 (7th Cir. 1992)............................................................17

*Messenger v. Anderson*,
    225 U.S. 436 (1912)...........................................................................13

*Metropolitan Regional Information System, Inc. v. American Home*
    *Realty Network, Inc.*,
    948 F. Supp. 2d 538 (D. Md. 2013) ....................................................16

*Meyers v. Jay Street Connecting Railroad*,
    288 F.2d 356 (2d Cir. 1961) ...............................................................15

*O'Bannon* v. *Town Court Nursing Center*,
    447 U.S. 773 (1980)................................................................... passim

*Owens v. Stirling*,
    967 F.3d 396 (4th Cir. 2020)..............................................................13

*Planned Parenthood of Greater Texas Family Planning &*
    *Preventative Health Services, Inc. v. Kauffman*,
    981 F.3d 347 (5th Cir. 2020)...................................................... passim

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
    862 F.3d 445 (5th Cir. 2017).......................................................10, 25

*Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana*
    *State Department of Health*,
    699 F.3d 962 (7th Cir. 2012)..............................................................25

*Planned Parenthood of Kansas v. Andersen*,
    882 F.3d 1205 (10th Cir. 2018).....................................................24, 25

*Planned Parenthood South Atlantic v. Baker*,
    941 F.3d 687 (4th Cir. 2019)...................................................7, 21, 25

*Sejman v. Warner-Lambert Company, Inc.,*
  845 F.2d 66 (4th Cir. 1988) ................................................. 19

*Sherley v. Sebelius,*
  689 F.3d 776 (D.C. Cir. 2012) .............................................. 17

*Southern Railway Company v. Clift,*
  260 U.S. 316 (1922) ............................................................ 15

*United States Department of Housing & Urban Development v. Cost
  Control Marketing & Sales Management of Virginia, Inc.,*
  64 F.3d 920 (4th Cir. 1995) ................................................. 17

*United States v. Bettenhausen,*
  499 F.2d 1223 (10th Cir. 1974) ............................................ 15

*United States v. United States Smelting Refining & Mining Co.,*
  339 U.S. 186 (1950) ................................................. 14, 15, 18

*University of Texas v. Camenisch,*
  451 U.S. 390 (1981) ....................................................... 14, 18

*Wilder* v. *Virginia Hospital Association,*
  496 U.S. 498 (1990) .............................................................. 8

## **Statutes**

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ..................................................................... 1

42 U.S.C. § 1396a .................................................................. 4

42 U.S.C. § 1396a(a)(23) ............................................. 1, 3, 6, 9

42 U.S.C. § 1396a(p) .......................................................... 3, 4

42 U.S.C. § 1396a(kk)(8)(B)(ii) ............................................. 4

42 U.S.C. § 1396c .................................................................. 2

42 U.S.C. § 1396-1 ................................................................ 2

42 U.S.C. § 1983 ...................................................................... 1, 6, 9

S.C. CODE ANN. § 43-5-1185 ....................................................5

**Other Authorities**

President's Proposals for Revision in the Social Security System,
   Hearing on H.R. 5710 before the H. Comm. on Ways and Means,
   Part 4 (April 6 and April 11, 1967).......................................3

**Regulations**

42 C.F.R. 1002.210 ....................................................................4

42 C.F.R. 1002.213 ....................................................................4

42 C.F.R. 59.16 .........................................................................5

S.C. CODE ANN. REGS. 126-150 ...............................................4

S.C. CODE ANN. REGS. 126-404...............................................4

## JURISDICTIONAL STATEMENT

This case arose under 42 U.S.C. § 1396a(a)(23) of the Medicaid Act, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. The United States District Court for the District of South Carolina had federal-question jurisdiction under 28 U.S.C. § 1331. On December 14, 2020, the district court entered final judgment in favor of Plaintiffs Planned Parenthood South Atlantic and Julie Edwards. J.A. 302–03. The Director timely filed his notice of appeal on January 8, 2021. J.A. 304. This Court has jurisdiction of this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This appeal raises two issues:

1. Whether this Court's discretionary law-of-the-case doctrine makes the Court's prior holding in the Director's preliminary-injunction appeal binding on this Court in this permanent-injunction appeal.

2. Whether Medicaid recipients have a private right of action under 42 U.S.C. § 1396a(a)(23)[2] and 42 U.S.C. § 1983 to challenge a state's determination that a specific provider is not qualified to provide certain medical services.

---

[2] "This provision is sometimes referred to as the 'any-qualified-provider' or 'free-choice-of-provider' provision." *Planned Parenthood of Greater Texas Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 354 (5th Cir. 2020) (en banc).

## STATEMENT OF THE CASE

### A. Statutory background

#### 1. Congress passes the Medicaid Act to fund state efforts to provide free/low-cost medical services.

In 1965, Congress created Medicaid, "a federal program that subsidizes the States' provision of medical services" to families and individuals "whose income and resources are insufficient to meet the costs of necessary medical services." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 323 (2015) (quoting 42 U.S.C. 1396–1). The program "is a cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012).

"Like other Spending Clause legislation, Medicaid offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in accordance with congressionally imposed conditions." *Armstrong*, 575 U.S. at 323. States create "plans for medical assistance" and submit them to the Secretary of Health and Human Services for approval and disbursement of funds. 42 U.S.C. § 1396-1. If the Secretary later finds "that in the administration of the plan there is a failure to comply substantially" with the Act's requirements, the Secretary may withhold all or part of the state's funds until "satisfied that there will no longer be any such failure to comply." 42 U.S.C. § 1396c.

### 2.  Congress adds any-qualified-provider provision.

Two years later, Congress amended the Medicaid Act to add § 1396a(a)(23)(A) in response to concerns states were forcing Medicaid recipients to use one of a limited number of specific providers. *E.g.*, President's Proposals for Revision in the Social Security System, Hearing on H.R. 5710 before the H. Comm. on Ways and Means, Part 4 (April 6 and April 11, 1967), at 2273 (in Puerto Rico, "[i]ndigent patients [were being] 'forced' to receive hospital and medical services only in Commonwealth facilities"); 2301 (in Massachusetts, private physicians at "teaching hospitals" were not being reimbursed).

The added provision requires that plans "must" allow "any individual eligible for medical assistance" to "obtain such assistance from any [provider] qualified to perform the service or services required . . . who undertakes to provide" them. 42 U.S.C. § 1396a(a)(23)(A). Some courts call this the "free-choice-of-provider" provision. But that overlooks the qualifier that recipients choose from a "range of *qualified* providers." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980). So § 1396a(a)(23)(A) is really an "any-*qualified*-provider" provision.

The Medicaid Act does not define "qualified." But it specifies that states retain broad authority to exclude providers "for any reason for which the Secretary could exclude the individual or entity from participation in" the *Medicare* program, "[i]n addition to any other authority" states retain to exclude providers. 42 U.S.C. § 1396a(p)(1).

### 3. South Carolina creates procedures and remedies for excluded providers.

The Medicaid Act contemplates states will provide administrative procedures and remedies for excluded providers. *E.g.*, 42 U.S.C. §§ 1396a(a)(4)(A),(39),(41),(77); 1396a(p); 1396a(kk)(8)(B)(ii). And federal regulations require states to provide "administrative procedures" and "any additional appeals rights that would otherwise be available under procedures established by the State." 42 C.F.R. 1002.210; 1002.213.

Consistent with those requirements, South Carolina offers providers the right to a hearing before a proposed exclusion, suspension, or termination based on certain grounds. S.C. CODE ANN. REGS. 126-404. South Carolina also provides an administrative appeal process to anyone "possessing a right to appeal." S.C. CODE ANN. REGS. 126-150.

That right to appeal can result from "statutory, regulatory and/or contractual law." *Id.* And the Department's enrollment agreements state that "for any dispute arising under [them], the provider shall have as [its] sole and exclusive remedy the right to request a hearing" from the Department within 30 days of the contested action. J.A. 81, J.A. 105. Those proceedings must align with the Department's "appeals procedures and S.C. Code Ann. 1-23-310 et. seq." *Id.* And S.C. Code Ann. 1-23-380 provides a right to judicial review of administrative-appeal decisions. *Id.*

4

### B. Factual background

### 1. South Carolina deems Planned Parenthood unqualified.

On July 13, 2018, South Carolina's Governor issued an executive order directing the Department to (1) deem abortion clinics unqualified to provide family planning services, (2) terminate enrollment agreements with them, and (3) deny future enrollment applications from them. J.A. 54. This order is consistent with recent regulations excluding abortion providers from Title X funding at the federal level. 42 C.F.R. 59.16.

The Governor's order also follows S.C. CODE ANN. § 43-5-1185, which prohibits the use of funds to pay for abortions, because "the payment of taxpayer funds to abortion clinics, *for any purpose*, results in the subsidy of abortion and the denial of the right to life." J.A. 53 (emphasis added). Disqualifying clinics promotes the state's interest in defending life while ensuring that agencies that do not perform abortions receive funding to provide "access to necessary medical care and important women's health and family planning services." J.A. 54.

The same day the Governor issued the executive order, the Department notified Planned Parenthood South Atlantic that it was "no longer . . . qualified to provide services to Medicaid beneficiaries." J.A. 56. Thus, its "enrollment agreements . . . [were] terminated effective July 13, 2018." *Id.* Planned Parenthood could qualify for state funding by discontinuing abortions, but it has chosen not to do so.

### 2. Planned Parenthood and a client sue in federal court; Planned Parenthood eventually files administrative appeal.

Two weeks later, Planned Parenthood South Atlantic and Julie Edwards, one of its Medicaid clients, sued the Director in federal district court. J.A. 10. Three days after that, they moved for a temporary restraining order and a preliminary injunction. J.A. 24. They argued that by terminating Planned Parenthood's enrollment agreements, the Director violated Medicaid recipients' right "to obtain family planning and other preventive health care services from the qualified provider of their choosing under 42 U.S.C. § 1396a(a)(23)." *Id.*

The Director opposed the motion because the any-qualified-provider provision "does not unambiguously create a federal right enforceable by providers and individual patients under 42 U.S.C. § 1983." Def.'s Mem. of Law in Opp'n to Pls.' Mot. for TRO and Prelim. Inj. at 5, ECF No. 16. Citing the Supreme Court's *O'Bannon* decision, the Director added that Planned Parenthood and Edwards were reading the alleged right too broadly. *Id.* at 8–10.

In several places in the Director's opposition brief, he referenced Planned Parenthood's right to an administrative appeal and resulting judicial review, and Planned Parenthood's apparent decision to forgo such an appeal. *Id.* at 3, 9, 11. On August 14, 2018, Planned Parenthood filed an administrative appeal—a day *after* the contractual, 30-day deadline—which remains pending.

### C.  Procedural history

#### 1.  District court grants preliminary injunction.

The district court held that Edwards was likely to succeed on the merits of her Medicaid Act claim and so granted her motion for a temporary restraining order and a preliminary injunction. J.A. 198, J.A. 210, J.A. 214. Because that ruling resolved the issue, the court declined to analyze Planned Parenthood's right to the same relief. J.A. 214.

#### 2.  This Court notes 5-1 circuit split and affirms.

The Director appealed, and a panel of this Court affirmed, holding that Edwards had "demonstrated a substantial likelihood of success" because (1) "Congress's intent to create an individual right enforceable under § 1983" was "unambiguous," and (2) "a plain-language reading of the provision's mandate . . . bars states from excluding providers for reasons unrelated to professional competency." J.A. 218, J.A. 249.[3]

On the first question, the panel applied the three *Blessing* factors,[4] weighed whether "Congress expressly or implicitly foreclosed a § 1983 remedy," and joined "the Fifth, Sixth, Seventh, Ninth, and Tenth Circuits in finding . . . a private right enforceable under § 1983." J.A. 229–36. The panel only briefly mentioned the Eighth Circuit's contrary holding in *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017). J.A. 230, J.A. 236.

---

[3] *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 690–91, 706 (4th Cir. 2019) (*Baker I*).

[4] *Blessing v. Freestone*, 520 U.S. 329 (1997).

"Taking the first *Blessing* factor," the panel reasoned that "the phrase 'any individual' is a prime example of the kind of 'rights-creating' language required to confer a personal right." J.A. 230. The panel rejected the Director's point that, in context, the any-qualified-provider provision is "no more than a 'plan requirement,'" not an individual right. J.A. 237.

"As for the second *Blessing* factor," the panel posited that the provision "is not so vague and amorphous that its enforcement would strain judicial competence." J.A. 231 (cleaned up). The panel disregarded the Director's argument that—considering all the reasons a provider could be *un*qualified—courts often will have trouble making that determination. J.A. 231–32.

On the third *Blessing* factor, the panel said that the provision's text "unambiguously imposes a binding obligation on the States" because "states 'must provide' a Medicaid recipient with his or her choice of provider qualified to perform the service at issue." J.A. 232 (cleaned up).

Finally, the panel concluded that Medicaid's enforcement scheme does not "foreclose a private right of action." J.A. 233. The panel did not deny "the Secretary's ability to cut Medicaid funds" to states that fail to comply. J.A. 234. But it disparaged that remedy—calling it "drastic" and "illogical"—and cited the now-discredited *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), as evidence that the Supreme Court "has already held that the Medicaid Act's administrative scheme" is not "comprehensive" enough "to foreclose a private right of action." J.A. 234.

On the second question before the panel—whether the any-qualified-provider provision "bars states from excluding providers for reasons unrelated to professional competency," J.A. 218—the panel rejected in a single paragraph the Director's argument that the Supreme Court in *O'Bannon* had "interpreted the free-choice-of-provider provision to apply only to providers that continue to be qualified in the [state's] Medicaid program as a matter of state law," J.A. 244 (cleaned up). Joining "three of the four circuits to have addressed this issue," including the Fifth Circuit, the panel distinguished *O'Bannon* on the ground that "the patients there did not bring a substantive claim seeking to vindicate their rights under the free-choice-of-provider provision, but rather sued for violation of their procedural due process rights," namely their "right to a pre-termination hearing before the state could close" their nursing home. J.A. 244–45.

### 3. District court grants summary judgment for Plaintiffs, mooting pending certiorari petition.

Following that panel decision, the Director petitioned the Supreme Court for a writ of certiorari to resolve the circuit split over "[w]hether Medicaid recipients have a private right of action under 42 U.S.C. 1983 and 42 U.S.C. 1396a(a)(23) to challenge a state's determination that a specific provider is not qualified to provide certain medical services." Pet. for Writ of Cert. at i, *Baker v. Planned Parenthood S. Atl.*, 141 S. Ct. 550 (2020) (No. 19-1186).

While that petition was pending, the district court granted Plaintiffs summary judgment on their claim that the Director violated the any-qualified-provider provision by disqualifying Planned Parenthood from South Carolina's Medicaid program. J.A. 291, J.A. 299. Consistent with that ruling, the court directed Plaintiffs to submit a draft order granting their request for a permanent injunction. J.A. 299.

Five days later, Plaintiffs filed a supplemental brief in the Supreme Court arguing it should deny the Director's petition because it would become moot when the district court entered its permanent injunction. Suppl. Br. for Resp'ts, *Baker*, 141 S. Ct. 550 (2020) (No. 19-1186). The Court denied the petition. *Baker*, 141 S. Ct. 550 (2020).

### 4. Sitting en banc, Fifth Circuit changes course and holds any-qualified-provider provision does *not* create a private right of action.

One month after the Supreme Court denied the Director's cert petition, the Fifth Circuit Court of Appeals issued its decision in *Planned Parenthood of Greater Texas Family Planning & Preventative Health Services., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020) (en banc). As the panel in this case previously observed, a panel of the Fifth Circuit had held that the any-qualified-provider provision creates a private right enforceable under § 1983. J.A. 230 (citing *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017)). Thus, the Fifth Circuit had been in the majority in the 5-1 circuit split. *Id.*

In *Kauffman*, though, the en banc court of appeals overruled that panel decision 11-5, 981 F.3d at 350, holding that individuals who had received or sought services from abortion providers could *not* "bring a § 1983 suit to contest the State's determination that the Providers were not 'qualified' providers," *id.* at 353. The *Kauffman* court based that decision "primarily on two independent bases: (1) the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, and (2) the text and structure" of the any-qualified-provider provision, "which does not unambiguously provide that a Medicaid patient may contest a State's determination that a particular provider is not 'qualified.'" *Id.* at 350 (footnote omitted). Accordingly, the Fifth Circuit vacated the district court's preliminary injunction "prohibiting the termination of [Planned Parenthood's] Medicaid provider agreements." *Id.* at 352.

### 5. District court enters permanent injunction, and the Director appeals.

After the district court granted Plaintiffs summary judgment on the first count in their complaint, the parties filed a stipulation of dismissal to dispose of Plaintiffs' two remaining constitutional claims. J.A. 300–01. And on December 14, 2020, the district court permanently enjoined the Director and his successors from "terminating or excluding" Planned Parenthood from South Carolina's Medicaid program "on the grounds it is an abortion clinic or provides abortion services." J.A. 302–03. The Director timely noted his appeal. J.A. 304.

## SUMMARY OF ARGUMENT

When this case last came before this Court on appeal, the panel affirmed the district court's order granting a preliminarily injunction. J.A. 218. In that opinion, the panel misinterpreted and misapplied binding Supreme Court precedent and wrongly concluded that Congress intended to confer a private right of action on individual Medicaid beneficiaries. The Fifth Circuit's recent en banc decision in *Kauffman* makes those errors plain. Under these circumstances, the law-of-the-case doctrine does not prevent this Court from correcting its earlier mistakes. And the Court's ultimate responsibility to reach the right result requires that it make those corrections and reverse.

## ARGUMENT

### I. Law of the case does not prevent the Court from revisiting the demonstrably wrong rulings in the prior panel opinion.

In the Director's prior appeal, the panel distinguished *O'Bannon* and held that Edwards had "demonstrated a substantial likelihood of success" because the panel thought that "Congress's intent to create an individual right enforceable under § 1983" in the any-qualified-provider provision was "unambiguous," and that "a plain-language reading of the provision's mandate . . . bars states from excluding providers for reasons unrelated to professional competency." J.A. 218, J.A. 244–45 (distinguishing *O'Bannon*), J.A. 249. This procedural posture "begs the question of whether [this Court is] bound by that prior determination under the 'law of the case' doctrine." *Owens v. Stirling*, 967 F.3d 396,

423 (4th Cir. 2020). That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* (cleaned up).

But the "principle is not absolute nor inflexible." *Cap. Invs. Co. v. Executors of Morrison's Est.*, 584 F.2d 652, 654 (4th Cir. 1978) (per curiam). "As the Supreme Court has recognized, the law of the case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Owens*, 967 F.3d at 425 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). All "courts have an inherent power to correct earlier error, if it becomes apparent." *Cap. Invs. Co.*, 584 F.2d at 654. And the law-of-the-case doctrine "does not and cannot limit the power of a court to reconsider an earlier ruling." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). "The doctrine is therefore discretionary rather than mandatory." *Owens*, 967 F.3d at 425 (cleaned up). And for that reason, it "admits of a variety of exceptions." *Id.*

This Court should revisit the legal conclusions in the prior panel opinion for three reasons. *First*, that opinion was on appeal from a preliminary injunction, and multiple circuits have recognized an exception to the law-of-the-case doctrine in those circumstances in later appeals. *Second*, in a case like this one, involving proper interpretation of a federal statute, the judge-made law-of-the-case doctrine cannot trump congressional intent. *Third*, as the Fifth Circuit's en banc

13

decision in *Kauffman* demonstrates, the prior panel opinion's application and interpretation of Supreme Court caselaw is "demonstrably incorrect." *Kauffman*, 981 F.3d at 365, 366. And this Court's "ultimate responsibility . . . is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515.

## A. For purposes of law of the case, preliminary-injunction appeals resolve preliminary questions about likelihood of success on the merits—not ultimate legal issues.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* "A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact *and conclusions of law* made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (cleaned up) (emphasis added).

For the same reasons, the Supreme Court has held that "it requires a final judgment to sustain the application of the rule of the law of the case just as it does for the kindred rule of res judicata." *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 199 (1950). In *U.S. Smelting*, the Court added that "although [res judicata]

14

is a uniform rule, the 'law of the case' is only a discretionary rule of practice." *Id.* Law of the case merely "directs discretion," whereas res judicata "supersedes it and compels judgment." *S. Ry. Co. v. Clift*, 260 U.S. 316, 319 (1922). Thus, the law-of-the-case doctrine does not apply when the earlier ruling involves not "a final adjudication," but merely "a temporary injunction . . . to maintain the status quo." *U.S. Smelting*, 339 U.S. at 198–99.[5]

Multiple courts of appeals have refused to apply the law-of-the-case doctrine following prior interlocutory appeals on similar grounds. *E.g.*, *Homans v. City of Albuquerque*, 366 F.3d 900, 904 n.5 (10th Cir. 2004) ("To the extent that any language in *Homans II* can be read as an assessment of the actual merits of Homans' claim, as opposed to his likelihood of success on the merits, such language is dicta. Dicta is not subject to the law of the case doctrine."); *Meyers v. Jay St. Connecting R.R.*, 288 F.2d 356, 360 n.10 (2d Cir. 1961) (panel not bound by its prior decision because the "issue on an appeal from a preliminary injunction is different from where a permanent injunction is tested"); *Hunter v. Atchison, T. & S. F. Ry. Co.*, 188 F.2d 294, 301 (7th Cir. 1951) ("The case was before us on an appeal from an order granting a preliminary

---

[5] *Accord*, *e.g.*, *Choice Hotels Int'l, Inc. v. Patel*, 236 F. App'x 868, 870 (4th Cir. 2007) (per curiam) (applying *U.S. Smelting*); *United States v. Bettenhausen*, 499 F.2d 1223, 1230 (10th Cir. 1974) ("The rule of the law of the case does not apply unless there is a final judgment that decided the issue.").

injunction; the paramount question before us was whether the district court had abused its discretion."); *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 697 (8th Cir. 1948) ("There is sound reason for the rule that the decision of either the trial or appellate court in granting or denying the temporary injunction does not constitute the law of the case and will not estop the parties nor the court as to the merits of the case.").[6]

District courts in this circuit have followed suit. *E.g.*, *Heath v. Coll. of Charleston*, No. 2:17-CV-01792-PMD-JDA, 2018 WL 3353063, at *6 (D.S.C. June 15, 2018) (citing a Sixth Circuit case for the proposition that, "because a lesser burden of proof was required in ruling on a motion for preliminary [relief] than a motion for summary judgment, decisions on preliminary injunctions do not constitute the law of the case"), *report and recommendation adopted,* No. CV 2:17-1792-PMD-JDA, 2018 WL 3344654 (D.S.C. July 9, 2018); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 551 (D. Md. 2013) ("In general, a court's decisions at the preliminary injunction

---

[6] *Cf. DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 77 (2d Cir. 1992) ("[w]ithout deciding whether [prior] finding was holding or dictum," affirming trial court's decision not to apply law-of-the-case doctrine because prior finding was on a motion for a preliminary injunction); *City of Council Bluffs v. Omaha & C.B. St. Ry. Co.*, 9 F.2d 246, 249 (8th Cir. 1925) (recognizing "the established rule that, under an appeal from a decree for a preliminary injunction, the appellate court ought not to determine crucial questions conditioning the merits of the case . . . because such an adjudication would not estop any of the parties in the subsequent trial of the issues of the case or otherwise").

phase do not constitute law of the case in further proceedings and do not limit or preclude the parties from litigating the merits.") (collecting cases); *Mkt. Am., Inc. v. Rossi*, No. 1:97CV00891, 1999 WL 1939247, at *6 (M.D.N.C. Apr. 15, 1999) ("When the initial ruling is one made in connection with a motion for a preliminary injunction, it is less likely to be considered the law of the case.").

This Court has, on occasion, applied the law-of-the-case doctrine in a later appeal following a prior interlocutory appeal. *E.g.*, *L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011); *U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920 (4th Cir. 1995). But the Court in those cases did not address *U.S. Smelting* or the argument that courts should not apply the doctrine following a prior interlocutory appeal. Some courts also have tried to limit *Smelting* to its facts and procedural posture, *e.g.*, *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1291–92 (7th Cir. 1992) (per curiam), while others have ignored it altogether, *see Fish v. Schwab*, 957 F.3d 1105, 1140–41 (10th Cir. 2020); *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015); *Sherley v. Sebelius*, 689 F.3d 776, 782–83 (D.C. Cir. 2012) (collecting cases).

17

This Court should not ignore Supreme Court precedent. The primary question before the panel in the prior appeal was whether Edwards had "demonstrated a substantial likelihood of success." J.A. 249. It does not matter that the panel appeared to go further in some of its language regarding the availability of a private right of action. *Camenisch*, 451 U.S. at 398 ("While it is true that some of the Court of Appeals' language suggests a conclusion that Camenisch would win on the merits, the court certainly did not hold that the standards for a summary judgment had been met."). The absence of a "final adjudication" in the prior appeal counsels against applying the law-of-the-case doctrine here. *U.S. Smelting*, 339 U.S. at 198–99. And that is especially true given the presence of the two additional factors discussed below.

## B. When interpreting a federal statute, a judge-made doctrine should not trump Congress's intent.

"To support an action under § 1983, a plaintiff relying on a federal law must establish that Congress clearly intended to create an enforceable federal right." *Does*, 867 F.3d at 1039. "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue . . . ." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007). And this Court's "duty in a case involving statutory interpretation is to ascertain and implement the intent of Congress." *Kumar v. Republic of Sudan*, 880 F.3d 144, 153 (4th Cir. 2018) (cleaned up).

Not surprisingly, a "judicially created procedural doctrine" like the law of the case "cannot defeat the intent of Congress." *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988). This makes sense: the "law of the case doctrine is not an inexorable command but rather a prudent judicial response to the public policy favoring an end to litigation." *Id.* at 68 (cleaned up). The doctrine "directs a court's discretion," but it "does not limit the tribunal's power." *Id.* at 69 n.4 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Thus, even in cases where the law-of-the-case doctrine would otherwise control, "it would nevertheless be error" for a court to refuse to follow Congress's intent in interpreting and applying a federal statute. *Id.* at 69.

In the prior panel opinion, this Court held that "Congress's intent to create an individual right enforceable under § 1983 in the free-choice-of-provider provision is unambiguous." J.A. 218. But in its en banc decision in *Kauffman*, the Fifth Circuit reached the exact opposite conclusion about Congress's intent, holding that "Congress did *not* intend to create a right under § 1396a(a)(23) such that Medicaid patients could contest a State's determination that a particular provider is not 'qualified.'" 981 F.3d at 359 (emphasis added). If the Fifth Circuit is right about that—and it is—then this Court should not allow a "judicially created procedural doctrine" like the law of the case to "defeat the intent of Congress." *Sejman*, 845 F.2d at 69.

19

**C. When applying binding Supreme Court holdings, a judge-made doctrine should not prevent courts from correcting their own mistakes.**

Finally, the law-of-the-case doctrine does not negate this Court's "inherent power to correct earlier error, if it becomes apparent." *Cap. Invs. Co.*, 584 F.2d at 654. The Court's "ultimate responsibility . . . is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. For that reason, "the doctrine of the law of the case permits a change of position if it appears that the court's original ruling was erroneous." *DeLong Equip. Co. v. Wash. Mills Electro Mins. Corp.*, 990 F.2d 1186, 1197 (11th Cir. 1993) (cleaned up), *amended,* 997 F.2d 1340 (11th Cir. 1993). And that should be especially true in a case like this one involving the proper interpretation of binding Supreme Court holdings. *See Hopwood v. State of Texas*, 236 F.3d 256, 274 (5th Cir. 2000) (concluding that the law of the case applies when a prior panel "tackle[d] legal questions that the Supreme Court [had] declined to answer," but strongly implying that the doctrine does *not* apply if the prior panel misapplied binding "Supreme Court *holdings*").

As described in greater detail below, the prior panel based its decision on its misinterpretation of the Supreme Court's holdings in *O'Bannon*, *Gonzaga University v. Doe*, 536 U.S. 273 (2002), and *Armstrong*. And those errors became even more obvious when the Fifth Circuit issued its en banc decision in *Kauffman* last November—more than one year after the prior panel decision.

20

Most egregiously, the 11-5 en banc majority in *Kauffman* explic-itly calls out the prior panel opinion's treatment of *O'Bannon* here. That panel opinion characterized *O'Bannon* as "sp[eaking] to the narrow question whether residents of a nursing home had a right to a pre-termination hearing before the state could close a home that all parties agreed was professionally 'unqualified' to render patient care.'" *Kauffman*, 981 F.3d at 365 (quoting *Baker I*, 941 F.3d at 704). The en banc majority declared that characterization "demonstrably incorrect" in two separate ways. 981 F.3d at 365, 366; *see also infra* at II.A.

The panel, of course, did not have the benefit of *Kauffman* when it made its prior decision—but the case is before the Court now. And while *Kauffman* is not binding in this circuit, it provides "a legitimate ground" for the "rejection of the law of the case doctrine in this case," assuming the "reasons for revisiting [the panel's] prior rulings" are "cogent" and "compelling." *DiLaura*, 982 F.2d at 77 (cleaned up). Given the prior panel decision's misapplication of binding Supreme Court holdings, its misinterpretation of congressional intent, and the tentative nature of a decision on a preliminary-injunction appeal, the reasons for revisiting that decision are "cogent" and "compelling." *Id.* And this Court should exercise its "inherent power to correct [that] earlier error" now that it has "become[] apparent." *Cap. Invs. Co.*, 584 F.2d at 654.

21

## II.   As the Fifth Circuit's en banc decision explains, the panel opinion is demonstrably wrong on the merits.

### A.   The panel misinterpreted *O'Bannon*'s holding that a Medicaid beneficiary has no right to challenge a state's determination that a provider is unqualified.

"In *O'Bannon v. Town Court Nursing Center*, the Supreme Court determined that individuals who are Medicaid beneficiaries do not have a right under 42 U.S.C. § 1396a(a)(23) to contest a state or federal agency's determination that a Medicaid provider is not 'qualified.'" *Kauffman*, 981 F.3d at 355 (footnote omitted). The *O'Bannon* plaintiffs were nursing home residents who argued the state violated their due process rights by failing to give them a hearing before "revok[ing] the home's authority to provide them with nursing care at government expense." *O'Bannon*, 447 U.S. at 775. Thus, their appeal asked whether they had "an interest in receiving benefits for care in a particular facility that entitle[d] them, as a matter of constitutional law, to a hearing before the Government [could] decertify that facility." *Id.* at 784.

The *O'Bannon* patients "identified two possible sources of such a right," one of which is relevant here. *Id.* They argued that the any-qualified-provider provision gave them "a property right to remain in the home of their choice absent good cause for transfer and therefore entitle[d] them to a hearing on whether such cause exists." *Id.* The Supreme Court disagreed. *Id.* at 784–85. Specifically, it held that the provision "gives recipients the right to choose among a range of *quali-*

*fied* providers, without government interference." *Id.* at 785. "But it clearly does not confer a right on a recipient to enter an unqualified home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified." *Id.*

For these reasons, the court of appeals erred in holding that the Medicaid "provisions create a substantive right to remain in the home of one's choice absent specific cause for transfer." *Id.* at 786. "[W]hile a patient has a right to continued benefits to pay for care in the qualified institution of his choice," the Court concluded, "he has *no enforceable expectation* of continued benefits to pay for care in an institution that has been determined to be unqualified." *Id.* (emphasis added).

In this case, the prior panel decision reached the exact opposite conclusion. J.A. 218, 245–46. It held that Congress *did* "create an individual right enforceable under § 1983 in the free-choice-of-provider provision." J.A. 218. And whereas the Supreme Court explicitly *rejected* the argument that the provision "create[s] a substantive right to remain [with the provider] of one's choice *absent specific cause* for transfer," *O'Bannon*, 447 U.S. at 786, the panel *accepted* that argument, holding that the provision "confers an individual right on Medicaid recipients to select the willing and competent provider of their choice" while preventing the State from "arbitrarily disqualify[ing]" a chosen provider "upon the generalized assertion of inapposite state interests," J.A. 245–46.

23

So what happened? Two things. First, the panel distinguished *O'Bannon* based on its mistaken belief that *O'Bannon* only "spoke to the narrow question whether residents of a nursing home had a right to a pre-termination hearing before the state could close a home that *all parties agreed* was professionally 'unqualified' to render patient care." J.A. 244 (emphasis added). The Tenth Circuit had distinguished *O'Bannon* based on a similar reading, positing that the situation there was different because "no one [had] contested that the nursing home was unqualified to perform the services." *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1231 (10th Cir. 2018).

As the en banc Fifth Circuit made clear in *Kauffman*, "those statements are demonstrably incorrect." 981 F.3d at 365. "Though the *O'Bannon* opinion reflects that Medicaid entities had decertified the nursing home based on findings that the home failed to meet numerous standards for skilled nursing facilities, neither the nursing home nor its residents agreed with those assessments." *Id.* (footnote omitted). The residents and the nursing home had argued that they "were entitled to an evidentiary hearing *on the merits of the decertification decision* before Medicaid payments were discontinued." *Id.* (quoting *O'Bannon*, 447 U.S. at 777). "Clearly, the Medicaid patients sought to challenge the agencies' determination that the nursing home was no longer 'qualified' to provide services within the meaning of § 1396a(a)(23)." *Id.*

That is precisely what Edwards is doing here. And it is precisely what the Supreme Court held she cannot do. *O'Bannon*, 447 U.S. at 786 (rejecting the argument that the Act "create[s] a substantive right to remain [with the provider] of one's choice absent specific cause for transfer"); *Kauffman*, 981 F.3d at 357 (explaining that *O'Bannon* "establishes that § 1396a(a)(23) does not give Medicaid beneficiaries a right to question a State's determination that a provider is unqualified").

Second, the panel also distinguished *O'Bannon* based on its mistaken belief that the claim there was "very different" because the "patients there did not bring a substantive claim seeking to vindicate their rights under the free-choice-of-provider provision, but rather sued for violation of their procedural due process rights." J.A. 244–45. The Fifth, Seventh, and Tenth Circuits likewise had each declared that *O'Bannon* "involved only whether there was a right to due process," *not* "whether the individuals receiving Medicaid assistance had substantive rights under § 1396a(a)(23)." *Kauffman*, 981 F.3d at 366 (citing *Baker I*, 941 F.3d at 704, *Andersen*, 882 F.3d at 1231, *Gee*, 862 F.3d at 460, and *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 977 (7th Cir. 2012)).

"But this, too, is demonstrably incorrect." *Kauffman*, 981 F.3d at 366. The Court in *O'Bannon* "made plain" that resolving whether the nursing home residents had a due process right "to a hearing on the merits of whether the provider was 'qualified'" required the Court to

25

"determine whether § 1396a(a)(23) granted an underlying *substantive* right that would permit the residents to challenge a State's determination that a provider is not qualified." *Id.*[7] "The Court held that there is no such substantive right." *Id.* (citing *O'Bannon*, 447 U.S. at 785–86). "On this basis—the lack of a substantive right to a particular, decertified provider—the Court denied the plaintiffs' procedural due process claim." *Does*, 867 F.3d at 1048 (Shepherd, J., concurring). Specifically, the Court "made clear that § 1396a(a)(23) *does not confer a right to contest, collaterally attack, or litigate a State's determination that a provider is not 'qualified.'"* *Kauffman*, 981 F.3d at 367. And once again, the panel in this case held the exact opposite. J.A. 218, 244–46.

By dismissing *O'Bannon* on such "demonstrably incorrect" grounds, the prior panel decision flouted *O'Bannon*'s "central holding." *Kauffman*, 981 F.3d at 367. "[R]egardless of whether the State's qualification decision was correct, the individual beneficiaries *did not have a right* that would allow them to demand a hearing to challenge that determination." *Id.* (cleaned up, emphasis added). Without that right, Edwards has no basis for bringing her § 1983 claim. The prior panel decision got that wrong. But the Court retains the "inherent

---

[7] *Accord Does v. Gillespie*, 867 F.3d 1034, 1048 (8th Cir. 2017) (Shepherd, J., concurring) ("Any right to due process, whether asserted as a procedural or substantive claim, exists only when there is an underlying substantive right at issue.").

power" to get it right. *Cap. Invs. Co.*, 584 F.2d at 654. And the Court's "ultimate responsibility . . . to reach the correct judgment under law" requires that it do so here. *Am. Canoe Ass'n*, 326 F.3d at 515.[8]

### B. By applying the now defunct *Blessing* factors and the repudiated *Wilder* decision, the panel misapplied the Supreme Court's decisions in *Gonzaga* and *Armstrong*.

In the alternative, the prior panel opinion's separate holding that "Congress's intent to create an individual right enforceable under § 1983" is "unambiguous," J.A. 218, is also wrong for three reasons.

First, the panel opinion mostly ignored *Gonzaga* while applying *Blessing*'s three-factored test and rebuttable presumption. J.A. 229–39. In *Gonzaga*, the Supreme Court did *not* apply *Blessing*'s "multifactor balancing test." 536 U.S. at 286. Instead, the Court repeatedly criticized *Blessing* and the "confusion" it had inspired, ultimately "reject[ing] the notion that [the Court's] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 282–83, 286.

---

[8] *Accord Kauffman*, 981 F.3d at 370 (explaining that the full court's conclusion that the panel had "seriously misunderstood the import" and "failed to apply" *O'Bannon* "warrant[ed] overruling or abrogating" the panel decision even if "stare decisis [had been] fully applicable").

Following the Court's lead, the en banc Fifth Circuit in *Kauffman* did not apply *Blessing*'s multifactored test either. "Even absent *O'Bannon*'s holding," the Fifth Circuit concluded that "the text of § 1396a(a)(23) does not unambiguously grant Medicaid patients the right to be involved in or to contest a state agency's determination that a provider is not 'qualified.'" *Kauffman*, 981 F.3d at 358. And both *Gonzaga* and *Armstrong* supported that conclusion. *Id.* at 358–59.

Along the same vein, the Eighth Circuit's decision in *Does* exemplifies the proper post-*Gonzaga* approach to deciding whether a statute creates privately enforceable rights under § 1983. Applying *Gonzaga*, the *Does* court highlighted three "significant difficulties with the contention" that the any-qualified-provider provision "unambiguously creates an enforceable federal right." 867 F.3d at 1041. First, the "focus" of the provision—on the "federal agency charged with approving" state plans—is "two steps removed from the interests of the patients who seek services from a Medicaid provider." *Id.* "Second, Congress expressly conferred another means of enforcing" compliance with the provision: the "withholding of federal funds by the Secretary." *Id.* And "[t]hird, statutes with an 'aggregate' focus," like the Medicaid Act's "substantial compliance regime," do not "give rise to individual rights." *Id.* at 1042 (quoting *Gonzaga*, 536 U.S. at 288).

28

The Fifth and Eighth Circuits are right. And their reasoning proves that, untethered from *Blessing*'s now defunct "multifactor balancing test," *Gonzaga*, 536 U.S. at 286, courts correctly hold that the any-qualified-provider provision does not unambiguously confer a private right on individual Medicaid beneficiaries. This Court should revisit the panel's mistaken reliance on *Blessing* and hold likewise.

Second, the panel opinion also relied too heavily on the Supreme Court's now repudiated *Wilder* decision. J.A. 234. According to the panel, "the Supreme Court has already held [in *Wilder*] that the Medicaid Act's administrative scheme" does not "foreclose a private right of action." *Id.* But as the Eighth Circuit admonished in *Does*, courts should place "little stock in [*Wilder*'s] paradigm after *Armstrong*'s express disavowal of *Wilder*'s mode of analysis." *Does*, 867 F.3d at 1042.

Third, the panel opinion contradicts the Supreme Court's decision in *Armstrong*. Examining a separate Medicaid Act provision, the *Armstrong* majority held that Congress had "implicitly preclude[d] private enforcement" of that provision. 575 U.S. at 328. Relevant here, the Court observed that the "sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary." *Id.* That "express provision of one method of enforcing [the] substantive rule suggest[ed] that Congress intended to preclude others." *Id.* (quoting *Alexander v. Sandoval*, 532

U.S. 275, 290 (2001)). And the "dissent's complaint that the sanction available to the Secretary (the cut-off of funding) is too massive to be a realistic source of relief seem[ed] . . . mistaken." *Id.* at 331. The Court correctly doubted that a state would ignore a notice from the Secretary that the state's Medicaid plan was inadequate. *Id.*

Resurrecting that overruled complaint, the prior panel opinion dismissed Congress's chosen remedy as a "drastic" and "illogical" means of "vindicating the interests of individual Medicaid beneficiaries." J.A. 234. The panel's reasoning cannot be reconciled with the Supreme Court's conclusion in *Armstrong* that individual beneficiaries' ability to seek relief "through the Secretary rather than through the courts" offers them a "realistic source of relief." 575 U.S. at 331. Rather than try to reconcile the two, this Court should exercise its "inherent power to correct" its mistake. *Cap. Invs. Co.*, 584 F.2d at 654.

## CONCLUSION

In this as in every case, this Court's "ultimate responsibility . . . is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. The prior panel opinion does not negate that responsibility. *Id.* And that's especially true given the preliminary posture of that opinion, the issues of congressional intent that this case implicates, and the prior panel's misreading and misapplication of binding Supreme Court precedent, as illuminated by the Fifth Circuit's subsequent en banc opinion in *Kauffman*.

This Court should hold that Congress did not confer on individual Medicaid recipients a private right that would allow Edwards to challenge South Carolina's determination that Planned Parenthood is not qualified to receive Medicaid funding under the State's plan. Based on that holding, the Court should reverse the district court's opinion and order granting Plaintiffs summary judgment on the first count in their complaint, vacate the court's order entering declaratory and permanent injunctive relief, and remand for entry of an order entering summary judgment for the Director on Edwards's first claim.

In the alternative, the full Court should sua sponte take the case en banc to reconsider and overrule the prior panel decision.

## REQUEST FOR ORAL ARGUMENT

The Director respectfully requests oral argument to aid the Court in resolving these "important and recurring" questions. *Gee v. Planned Parenthood of Gulf Coast, Inc.*, 139 S. Ct. 408, 409 (2018) (Thomas, J., dissenting from denial of certiorari).

Dated: March 29, 2021            By:*/s/ John J. Bursch*

KELLY M. JOLLEY                    JOHN J. BURSCH
ARIAIL B. KIRK                         BURSCH LAW, PLLC
JOLLEY LAW GROUP, LLC          9339 Cherry Valley Ave SE #78
P.O. Box 50529                         Caledonia, MI 49316
Columbia, SC 29250                  (616) 450-4235
(803) 809-6500                         jbursch@burschlaw.com
kjolley@jolleylawgroup.com
akirk@jolleylawgroup.com

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,277 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Office 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook.

Dated: March 29, 2021

*/s/ John J. Bursch*
John J. Bursch
*Attorney for Defendant-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ John J. Bursch*
John J. Bursch
*Attorney for Defendant-Appellant*