No. 21-1043

# United States Court of Appeals
# for the Fourth Circuit

PLANNED PARENTHOOD SOUTH ATLANTIC, et al.,

*Plaintiffs-Appellees,*

– v. –

THOMAS CLARK PHILLIP, JR.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of South Carolina
Case No. 3:18-cv-02078 (Hon. Mary Geiger Lewis)

## RESPONSE BRIEF FOR APPELLEES

Nicole A. Saharsky
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Alice Clapman
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4909
alice.clapman@ppfa.org

M. Malissa Burnette
Kathleen McDaniel
BURNETTE, SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
Columbia, SC 29201
(803) 904-7913

*Counsel for Appellees Planned Parenthood South Atlantic and Julie Edwards*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1043     Caption: Planned Parenthood South Atlantic v. Phillip

Pursuant to FRAP 26.1 and Local Rule 26.1,

Planned Parenthood South Atlantic
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Nicole A. Saharsky          Date:   May 28, 2021

Counsel for: Appellees

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 21-1043         Caption: Planned Parenthood South Atlantic v. Phillip

Pursuant to FRAP 26.1 and Local Rule 26.1,

Julie Edwards
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Nicole A. Saharsky        Date: May 28, 2021

Counsel for: Appellees

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................1

STATEMENT OF THE ISSUE .........................................................3

STATEMENT OF THE CASE ..........................................................3

I.   PPSAT's Participation In South Carolina's Medicaid Program ........3

  A.   The Medicaid Program ...............................................................3

  B.   PPSAT's Services For Medicaid Patients ...................................4

  C.   Ms. Edwards' Experience At PPSAT .........................................6

II.  The State's Efforts To Exclude PPSAT From Medicaid....................6

III. The District Court's Preliminary-Injunction Proceedings .................7

  A.   Private-Right-Of-Action Holding ..............................................8

  B.   Holdings On Injunctive-Relief Factors ......................................8

IV.  This Court's Prior Decision ..............................................................9

  A.   Private-Right-of-Action Holding ...............................................9

  B.   Holdings On Injunctive-Relief Factors ....................................12

  C.   Concurrence And Certiorari Denial...........................................12

V.   The District Court's Summary-Judgment Decision ..........................12

SUMMARY OF ARGUMENT........................................................13

ARGUMENT...................................................................................15

I.   The Court Is Bound By Its Precedential Decision Holding That
     The Free-Choice-of-Provider Provision Is Privately Enforceable.....15

  A.   The Court Previously Decided The One Issue Presented
       In This Appeal........................................................................15

  B.   The Court's Prior Holding Is Binding Circuit Precedent ........18

  C.   The Court's Prior Holding Also Is Binding Law of the
       Case .......................................................................................21

    1.   The Court's prior holding was not clearly erroneous
         and would not work a manifest injustice........................23

# TABLE OF CONTENTS
(continued)

**Page**

2.   There is no exception to law of the case for legal holdings in preliminary-injunction appeals ...................27

II.   This Court's Prior Private-Right-Of-Action Holding Is Correct .......31

A.   The Medicaid Act's Free-Choice-Of-Provider Provision Is Privately Enforceable .............................................31

B.   The State's Counterarguments Lack Merit ...........................34

1.   *O'Bannon* did not address private rights of action under Section 1983............................................34

2.   The State's other arguments lack merit .........................38

CONCLUSION ..............................................................42

STATEMENT REGARDING ORAL ARGUMENT ......................................43

ii

## TABLE OF AUTHORITIES

**Page**

### Cases

*Ackerley Commc'ns of Mass., Inc. v. City of Cambridge,*
    135 F.3d 210 (1st Cir. 1998) ...................................................20

*ACLU v. Mukasey,*
    534 F.3d 181 (3d Cir. 2008) ...................................................29

*Alexander S. v. Boyd,*
    113 F.3d 1373 (4th Cir. 1997) ...............................................26

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ........................................................3, 39, 40

*Bader v. Wernert,*
    178 F. Supp. 3d 703 (N.D. Ind. 2016) ...................................25

*Baker v. Planned Parenthood S. Atl.,*
    141 S. Ct. 550 (2020) .............................................................12

*Blessing v. Freestone,*
    520 U.S. 329 (1997) ........................................................*passim*

*Carey v. Throwe,*
    957 F.3d 468 (4th Cir. 2020) .................................................41

*CFTC v. Walsh,*
    658 F.3d 194 (2d Cir. 2011) ...................................................29

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) ..........................................................22, 30

*City of Rancho Palos Verdes v. Abrams,*
    544 U.S. 113 (2005) ..........................................................10, 39

*Comcast of Me./N.H., Inc. v. Mills,*
    988 F.3d 607 (1st Cir. 2021) ...................................................29

*Craft v. United States,*
    233 F.3d 358 (6th Cir. 2000) .................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Ctr. for Special Needs Tr. Admin. v. Olson*,
  676 F.3d 688 (8th Cir. 2012) ...................................................41

*Does v. Gillespie*,
  867 F.3d 1034 (8th Cir. 2017) ................................ 24, 27, 35, 40

*Entergy Ark., Inc. v. Nebraska*,
  241 F.3d 979 (8th Cir. 2001) ...................................................29

*Everett v. Pitt Cnty. Bd. of Educ.*,
  788 F.3d 132 (4th Cir. 2015) ...................................................22

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020) ...............................................29

*G. ex rel. K. v. Haw. Dep't of Human Servs.*,
  No. 08-cv-551, 2009 WL 1322354 (D. Haw. May 11, 2009)....................25

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) ...........................................................*passim*

*Ham v. Breckon*,
  994 F.3d 682 (4th Cir. 2021) ...................................................21

*Harris v. Olszewski*,
  442 F.3d 456 (6th Cir. 2006) ...................................................24

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) ...................................................29

*Intergraph Corp. v. Intel Corp.*,
  253 F.3d 695 (Fed. Cir. 2001) .................................................29

*Kapable Kids Learning Ctr., Inc. v. Ark. Dep't of Human Servs.*,
  420 F. Supp. 2d 956 (E.D. Ark. 2005).........................................25

*Kasey v. Sullivan*,
  3 F.3d 75 (4th Cir. 1993) .......................................................26

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) .............................................................27

*L.F. v. Olszewski*,
    No. 04-cv-73248, 2004 WL 5570462 (E.D. Mich. Nov. 1, 2004)...............25

*L.J. v. Wilbon*,
    633 F.3d 297 (4th Cir. 2011) ..........................................................20, 28

*Lankford v. Sherman*,
    451 F.3d 496 (8th Cir. 2006) ...................................................................41

*Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*,
    772 F.3d 1352 (11th Cir. 2014) ...............................................................29

*M.A.C. v. Betit*,
    284 F. Supp. 2d 1298 (D. Utah 2003) ....................................................25

*Martin v. Taft*,
    222 F. Supp. 2d 940 (S.D. Ohio 2002) ...................................................25

*McMellon v. United States*,
    387 F.3d 329 (4th Cir. 2004) .....................................................18, 21, 22

*Miracles House Inc. v. Senior*,
    No. 17-cv-23582, 2017 WL 5291139 (S.D. Fla. Nov. 9, 2017) ................24

*Musacchio v. United States*,
    577 U.S. 237 (2016) ................................................................................22

*O'Bannon v. Town Court Nursing Ctr.*,
    447 U.S. 773 (1980) ........................................................................*passim*

*In re Oil Spill by Amoco Cadiz Off Coast of Fr. on Mar. 16,
1978*,
    954 F.2d 1279 (7th Cir. 1992) .................................................................31

*Pearson v. Edgar*,
    153 F.3d 397 (7th Cir. 1998) ...................................................................29

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Planned Parenthood Ariz. Inc. v. Betlach,*
727 F.3d 960 (9th Cir. 2013) ........................................24

*Planned Parenthood Ariz., Inc. v. Betlach,*
922 F. Supp. 2d 858 (D. Ariz.)......................................25

*Planned Parenthood Ark. & E. Okla. v. Selig,*
No. 4:15-cv-566, 2015 WL 13710046 (E.D. Ark. Oct. 5, 2015) ...............25

*Planned Parenthood of Blue Ridge v. Camblos,*
155 F.3d 352 (4th Cir. 1998) ........................................28

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative*
*Health Servs., Inc. v. Kauffman,*
981 F.3d 347 (5th Cir. 2020) .......................................24, 27, 35

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative*
*Health Servs., Inc. v. Smith,*
236 F. Supp. 3d 974 (W.D. Tex. 2017)................................25

*Planned Parenthood Gulf Coast, Inc. v. Kliebert,*
141 F. Supp. 3d 604 (M.D. La. 2015)...............................25

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't*
*of Health,*
699 F.3d 962 (7th Cir. 2012) ........................................24

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't*
*of Health,*
794 F. Supp. 2d 892 (S.D. Ind. 2011)...............................25

*Planned Parenthood of Kan. & Mid-Mo. v. Andersen,*
882 F.3d 1205 (10th Cir. 2018) ....................................24

*Planned Parenthood of Kan. & Mid-Mo. v. Mosier,*
No. 2:16-cv-2284, 2016 WL 3597457 (D. Kan. July 5, 2016) .................25

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Planned Parenthood Se., Inc. v. Bentley*,
   141 F. Supp. 3d 1207 (M.D. Ala. 2015) ....................................................25

*Planned Parenthood Se., Inc. v. Dzielak*,
   No. 3:16-cv-454, 2016 WL 6127980 (S.D. Miss. Oct. 20, 2016)...............25

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of*
   *Am. v. USDA*,
   499 F.3d 1108 (9th Cir. 2007) ..................................................................29

*Roe v. Dep't of Def.*,
   947 F.3d 207 (4th Cir. 2020) ....................................................................18

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1289 (11th Cir. 2005) ................................................................20

*Sherley v. Sebelius*,
   689 F.3d 776 (D.C. Cir. 2012) ..................................................................29

*Spectra Comm'cns Grp. v. City of Cameron, Mo.*,
   806 F.3d 1113 (8th Cir. 2015) ..................................................................41

*St. Paul Mercury Ins. Co. v. Williamson*,
   332 F.3d 304 (5th Cir. 2003) ....................................................................29

*Tatum v. RJR Pension Inv. Comm.*,
   855 F.3d 553 (4th Cir. 2017) ....................................................................20

*Taylor v. FDIC*,
   132 F.3d 753 (D.C. Cir. 1997) ..................................................................21

*TFWS, Inc. v. Franchot*,
   572 F.3d 186 (4th Cir. 2009) ....................................................................23

*U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales*
   *Mgmt. of Va., Inc.*,
   64 F.3d 920 (4th Cir. 1995) ......................................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*,
  899 F.3d 236 (4th Cir. 2018) ...................................................................23

*United States v. Aramony*,
  166 F.3d 655 (4th Cir. 1999) ..................................................................22

*United States v. Dodge*,
  963 F.3d 379 (4th Cir. 2020) .............................................................18, 19

*United States v. Lanham*,
  617 F.3d 873 (6th Cir. 2010) ..................................................................26

*United States v. Lewis*,
  963 F.3d 16 (1st Cir. 2020)......................................................................26

*United States v. U.S. Smelting Refin. & Mining Co.*,
  339 U.S. 186 (1950) ...........................................................................29, 30

*United States v. Washington*,
  593 F.3d 790 (9th Cir. 2010) ..................................................................20

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981) ................................................................................30

*Wilder v. Va. Hosp. Ass'n*,
  496 U.S. 498 (1990) ..........................................................................33, 39

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................18

*Women's Hosp. Found. v. Townsend*,
  No. 07-cv-711, 2008 WL 2743284 (M.D. La. July 10, 2008)...................25

## Statutes and Court Rule

42 U.S.C. § 1320a-2 .....................................................................................40

42 U.S.C. § 1396a(a)(23) ....................................................................7, 17, 39

# TABLE OF AUTHORITIES
## (continued)

**Page**

42 U.S.C. § 1396a(a)(23)(A) .................................................................*passim*

42 U.S.C. § 1396a(a)(30)(A) ...........................................................39

42 U.S.C. § 1396d(a) ..........................................................................3

42 U.S.C. § 1983 ...............................................................................*passim*

4th Cir. R. 36(b) ...............................................................................21

## Other Authorities

Abigail Abrams, *Planned Parenthood is Expanding Telehealth to All 50 States Amid the Coronavirus Pandemic*, Time (Apr. 14, 2020) ........................................................................................5

Comm. on Health Care for Underserved Women, Am. Coll. of Obstetricians and Gynecologists, *Opinion No. 826* (Mar. 2021) .............................................................................................7

18B Edward H. Cooper, *Federal Practice & Procedure* ..................29, 30, 31

Brittni Frederiksen et al., *Women's Experiences with Health Care During the COVID-19 Pandemic*, Kaiser Fam. Found. (Mar. 22, 2021) ...................................................................5

Leah H. Keller & Ruth Dawson, *Family Planning Providers Show Creativity and Resilience in Response to the COVID-19 Pandemic*, Guttmacher Inst. (June 24, 2020) ...........................5

1B James Wm. Moore et al., *Moore's Federal Practice* (1984)....................22

Gabriela Weigel et al., *Potential Impacts of Delaying 'Non-Essential' Reproductive Health Care*, Kaiser Fam. Found. (June 24, 2020) ...................................................................5

**INTRODUCTION**

This case raises only one issue, a question of statutory interpretation concerning the Medicaid Act. And this Court already resolved that issue in its prior decision in this case. In that decision, the Court thoroughly analyzed the statute at issue, the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), and concluded that it confers a right enforceable under 42 U.S.C. § 1983. That holding is binding circuit precedent and law of the case. This Court should follow it.

This case arose because South Carolina terminated Planned Parenthood South Atlantic's (PPSAT's) participation in the state Medicaid program without cause. PPSAT and one of its patients sued, claiming, among other things, that the termination violated the Medicaid Act's free-choice-of-provider provision. The district court entered a preliminary injunction, and the State appealed. In affirming the preliminary injunction, this Court decided a pure question of law – whether the free-choice-of-provider provision creates a private right of action for Medicaid patients. The Court held that the statute does create that right, as a matter of law. On remand, the district court understood that the Court's holding on that point was binding circuit precedent. It applied that holding and then (after considering the State's other arguments) entered summary judgment in favor of PPSAT and the patient.

1

The State now argues that this Court is not bound by its prior holding. But it is. The holding is binding circuit precedent, issued in a published, precedential decision. A panel of this Court is bound to follow it unless the en banc Court or the Supreme Court issues a contrary decision. Neither has happened here. The State simply ignores the fact that the Court's prior decision created binding circuit precedent.

The prior holding also is binding law of the case. The State admits that, but claims that an exception applies. There are only three narrow exceptions to the law-of-the-case doctrine, and none of them applies here. And even if an exception applied, the holding still would be binding circuit precedent, which the panel is bound to follow.

In any event, the Court was correct to hold, in its prior decision, that the Medicaid Act's free-choice-of-provider provision is privately enforceable. The Court thoroughly analyzed the statute's text, giving due attention to guidance from the Supreme Court. It concluded that the statute unambiguously and unmistakably creates a private right of action, agreeing with the vast majority of the federal courts that have decided that issue. The State provides no good reason for this Court to revisit its prior decision.

This Court should affirm the judgment of the district court.

2

## STATEMENT OF THE ISSUE

Whether this Court should follow its prior holding, in a published, precedential decision, that the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers a private right of action enforceable under 42 U.S.C. § 1983.

## STATEMENT OF THE CASE

## I. PPSAT's Participation In South Carolina's Medicaid Program

### A. The Medicaid Program

Medicaid is the national health insurance program for persons of limited financial means. JA219. It provides federal funding for medical care for children, needy families, the elderly, the blind, the disabled, and pregnant women. *See* 42 U.S.C. § 1396d(a).

A State's participation in Medicaid is conditioned on the State complying with various federal requirements. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015). One of those requirements is that the State's Medicaid plan permit "any individual eligible for medical assistance" to obtain that assistance from any provider who is "qualified to perform the service or services required" and "who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A). That is the free-choice-of-provider provision at issue in this case.

3

Medicaid patients in South Carolina face severely restricted options and barriers to care. South Carolina has some of the tightest eligibility requirements in the country. To be eligible for Medicaid-covered family planning services, an individual must make under $24,000 a year if living alone or $32,000 a year if supporting a dependent. JA033. Compared to the national population, South Carolina has a relatively large Medicaid patient population, a relatively low rate of spending per beneficiary, higher rates of key health problems, and a particular need for publicly supported family planning services. JA033-34.

## B.    PPSAT's Services For Medicaid Patients

PPSAT and its predecessors have provided essential medical services to low-income South Carolina residents for four decades. JA221. PPSAT serves Medicaid patients through its two health centers in the State, both of which are in medically underserved communities. JA010 ¶ 2, JA221, JA291.

PPSAT offers Medicaid patients essential medical care. That care includes physical exams; cancer screenings; contraception and contraceptive counseling; hormonal counseling; screening, vaccination, and treatment of sexually transmitted infections; pregnancy testing and counseling; and screening for conditions such as diabetes, depression, anemia, cholesterol, thyroid disorders, and high blood pressure. JA029 ¶ 5, JA221. Although PPSAT provides abortions, Medicaid does not pay for that service except

4

under very narrow circumstances required by federal law (if a woman's life is in danger or if she is the victim of rape or incest).  JA222 n.1, JA291.

Patients insured through Medicaid choose PPSAT for many reasons. PPSAT provides nonjudgmental, high-quality medical care.  JA030; JA121 ¶ 9.  PPSAT also has designed its services to help low-income patients overcome barriers to accessing health care.  JA030-31; *see* JA059-60.  For example, PPSAT offers extended hours and flexible scheduling; same-day appointments and short wait times; comprehensive contraceptive care in a single appointment; and interpreting services for patients who do not speak English.  JA030-31 ¶¶ 11-13.  PPSAT has continued to offer high-quality medical care during the COVID-19 pandemic, including through telemedicine.[1]  That has ensured continuity of care for low-income patients and has lessened the burdens on other parts of the health care system.[2]

---

[1]  *See* Abigail Abrams, *Planned Parenthood is Expanding Telehealth to All 50 States Amid the Coronavirus Pandemic*, Time (Apr. 14, 2020), https://tinyurl.com/2xhbbhfz; Leah H. Keller & Ruth Dawson, *Family Planning Providers Show Creativity and Resilience in Response to the COVID-19 Pandemic*, Guttmacher Inst. (June 24, 2020), https://tinyurl.com/3n2rs3h6.

[2]  *See* Brittni Frederiksen et al., *Women's Experiences with Health Care During the COVID-19 Pandemic*, Kaiser Fam. Found. (Mar. 22, 2021), https://tinyurl.com/b3xy2hk3; Gabriela Weigel et al., *Potential Impacts of Delaying 'Non-Essential' Reproductive Health Care*, Kaiser Fam. Found. (June 24, 2020), https://tinyurl.com/vm26hh49.

5

### C.    Ms. Edwards' Experience At PPSAT

Plaintiff Julie Edwards is a PPSAT patient who is insured through Medicaid.  JA221, JA291.  Because doctors have advised her that complications from diabetes would make it dangerous for her to carry a pregnancy to term, she sought access to safe and effective birth control.  JA 221.  After having difficulty finding a doctor who would treat her, she obtained care at PPSAT.  JA221-22.  PPSAT doctors provided her with birth control and also informed her that her blood pressure was elevated, so she could obtain follow-up care for that issue.  JA222.  Ms. Edwards was impressed with PPSAT and intends to obtain future health care there.  *Id.*; *see* JA061 ("[T]hey treated me respectfully and kindly, which has not always been my experience at other doctors' offices.").

## II.   The State's Efforts To Exclude PPSAT From Medicaid

Since taking office in 2017, Governor McMaster has sought to exclude PPSAT and others from participating in public health programs that have nothing to do with abortion because outside of those programs, they provide safe, legal abortion.  JA031, JA221-23 & n.1.  He issued two executive orders designed to withdraw state funding from any organization that provides abortions.  JA039-041, JA053-54, JA222-23, JA291-92.

Relying on the Governor's orders, South Carolina's Department of Health and Human Services (SCDHHS) terminated PPSAT's state Medi-

caid agreement. JA223, JA292. SCDHHS did not find that PPSAT is med-
ically unqualified; it terminated PPSAT's participation in Medicaid "solely
because [PPSAT] performed abortions outside of the Medicaid program."
JA222.

As a result of the termination, PPSAT's health centers immediately
had to begin turning away Medicaid patients. JA223. That exacerbated the
shortage of providers willing to serve Medicaid patients, and made it more
difficult for patients to obtain care in underserved areas.[3]

## III. The District Court's Preliminary-Injunction Proceedings

PPSAT and Ms. Edwards sued under 42 U.S.C. § 1983 to challenge
the State's decision to terminate PPSAT's participation in Medicaid. JA010-
23. They alleged that the termination violates the free-choice-of-provider
provision of the federal Medicaid Act, 42 U.S.C. § 1396a(a)(23). JA223,
JA292.[4] They sought preliminary injunctive relief, so that Ms. Edwards and
other patients could continue to receive care. JA223. After briefing and a

---

[3] *See* JA223; Comm. on Health Care for Underserved Women, Am. Coll. of
Obstetricians and Gynecologists, *Opinion No. 826* e166 (Mar. 2021),
https://tinyurl.com/vktf9yps.

[4] They also alleged that the termination violates the Equal Protection and
Due Process Clauses of the Fourteenth Amendment. JA022. The parties
stipulated to the dismissal of those claims without prejudice after the dis-
trict court granted summary judgment to PPSAT and Ms. Edwards. JA300-
01.

hearing, the district court preliminarily enjoined the director of the state health department from terminating PPSAT's participation in the state Medicaid program. JA198-215.

## A.    Private-Right-Of-Action Holding

The court first addressed whether the Medicaid Act's free-choice-of-provider requirement is privately enforceable under Section 1983. JA203-06. The court concluded that it is. JA202. The court explained that the free-choice-of-provider provision contains "clear language" that "unambiguously confers a right" on Medicaid patients to "obtain assistance from any qualified and willing provider"; that the statutory language describes the right "in mandatory terms" that are "neither vague nor amorphous"; that the statute gives the right to "individual patients," "not simply patients in the aggregate"; and that the federal government's ability to withhold funds does not foreclose private enforcement. JA204-05.

## B.    Holdings On Injunctive-Relief Factors

The district court then concluded that the State likely violated the Medicaid Act because it had no legitimate basis to terminate PPSAT's participation in the State's Medicaid program. JA208-10. The court found it "undisputed" that PPSAT is qualified within the meaning of the statute, JA208, and rejected the State's argument that it could terminate PPSAT's Medicaid contract because it does not want to subsidize abortion, making

8

the factual finding that "PPSAT's inclusion in South Carolina's Medicaid program results in neither the direct nor indirect use of State funds to pay for abortions."  JA208-09.

The district court also had "no trouble" finding that the balance of equities favored a preliminary injunction, because absent an injunction, "some of South Carolina's neediest citizens" would be denied "affordable access to competent health care."  JA210-11, JA213-14.

## IV.  This Court's Prior Decision

This Court affirmed in a published, precedential decision.  JA216-56. No judge dissented.

### A.  Private-Right-of-Action Holding

The Court first answered "the threshold question whether the Medicaid Act's free-choice-of-provider provision creates a private right enforceable under [42 U.S.C.] § 1983."  JA228-29.  The Court explained that the Supreme Court has identified several factors to help determine whether a federal statute creates a right enforceable under Section 1983.  JA229, JA232. Those factors are (1) whether Congress clearly "intended that the provision in question benefit the plaintiff"; (2) whether the asserted right is "not so vague and amorphous that its enforcement would strain judicial competence"; and (3) whether the obligation created by the statute is "mandatory." *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal quotation marks omitted); *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 & n.4 (2002);

JA229, JA232 (identifying those factors). The Court also considered whether Congress has expressly or impliedly evidenced an intention to foreclose private enforcement. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005); JA232.

The Court concluded that the statute here satisfies that test. First, the statute "unambiguously gives Medicaid-eligible patients an individual right" to choose from any qualified and willing Medicaid provider. JA230. "Congress's use of the phrase 'any individual' is a prime example of the kind of 'rights-creating' language required to confer a personal right," leaving "no doubt that [Congress] intended to guarantee each Medicaid recipient's free choice of provider." JA230-31.

Second, the Court determined that the statute "is not so 'vague and amorphous' . . . that its enforcement would strain judicial competence." JA231 (quoting *Blessing*, 520 U.S. at 340-41). The Court explained that the statute does not require a court to determine whether a provider is "qualified" in the abstract; it specifically directs the court to evaluate whether a provider is "qualified to perform *the service or services required.*" *Id.* That specific statutory language ties the term "qualified" to the actual services performed and makes the statute readily administrable. *Id.*

Third, the Court noted that the free-choice-of-provider provision is mandatory, because the statute says that a state plan "must" provide that

a Medicaid recipient can obtain care from the provider of his or her choice. JA232 (quoting 42 U.S.C. § 1396a(a)(23)(A)).

Finally, the Court determined that the Medicaid Act does not provide a comprehensive enforcement scheme that shows Congress's intent to foreclose private enforcement. JA232-36. The federal government's ability to withhold funds "is not sufficiently 'comprehensive' to foreclose" a private remedy, and withholding funds would not "vindicate[] the interests of individual Medicaid beneficiaries in their choice of provider." JA233-34.

The Court decided that *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980), did not support the State's position. JA244-45. The Court explained that *O'Bannon* did not address whether the free-choice-of-provider provision confers a private right of action; instead, it addressed only a "narrow" issue about whether residents of a nursing home had a procedural-due-process right to a pre-termination hearing before the State could close the home. JA244 (citing *O'Bannon*, 447 U.S. at 775-76 & n.3).

The Court recognized that it was "not at liberty to imply private rights of action willy-nilly." JA236-37. But, the Court concluded, the Medicaid Act's free-choice-of-provider provision stands out as exceptionally clear: "[I]f th[is] language does not suffice to confer a private right, enforceable under § 1983, upon the plaintiff here, it is difficult to see what language would be adequate." JA235-36.

11

### B. Holdings On Injunctive-Relief Factors

The Court then concluded that PPSAT and Ms. Edwards were likely to succeed on their claim that the State violated the Medicaid Act by terminating PPSAT from its Medicaid program. JA249-51. The State did not dispute that "PPSAT is professionally qualified to deliver the services that the individual plaintiff seeks." JA240; *see* JA232 n.3. The Court rejected the State's argument that it can deem a provider unqualified, and exclude it from Medicaid, for any reason it wishes. JA239-49. Finally, the Court concluded that the balance of equities favored maintaining the status quo. JA249-51.

### C. Concurrence And Certiorari Denial

Judge Richardson concurred. JA252-56. He agreed that the statute here "unambiguously create[s] a right privately enforceable under § 1983." JA252. But he suggested that the Supreme Court should provide additional guidance on the legal standard for future cases. JA256.

The State filed a petition for a writ of certiorari, which the Supreme Court denied, with no Justice dissenting. *See Baker v. Planned Parenthood S. Atl.*, 141 S. Ct. 550 (2020).

## V. The District Court's Summary-Judgment Decision

The district court granted summary judgment to PPSAT and Ms. Edwards. JA290-99, JA302-03.

Relying on this Court's decision, the district court once again held that the Medicaid Act's free-choice-of-provider provision is enforceable under Section 1983. JA295. The State argued that this Court's decision was "incorrect[]," but the district court explained that it was "required to follow Fourth Circuit precedent." JA298. On the merits, the district court held the State's actions in terminating PPSAT from the State's Medicaid program violated the Medicaid Act, because the State "den[ied] patients the right to choose any willing, qualified healthcare provider in the Medicaid program." JA294. The court then entered declaratory and injunctive relief. JA299, JA302-03.

## SUMMARY OF ARGUMENT

The only issue in this appeal is whether this Court is bound by its prior holding, in a precedential decision, that the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers a private right of action enforceable under 42 U.S.C. § 1983.

I.     The Court's prior holding is binding as circuit precedent and as law of the case. Under the law-of-the-circuit rule, this Court's holding in the preliminary-injunction appeal is binding on all other panels, including this one, unless it is overruled by the en banc Court or the Supreme Court. The State's brief simply does not grapple with the fact that the Court's prior published decision is binding precedent in the Fourth Circuit.

13

Instead, it argues only about the law-of-the-case doctrine. Under that doctrine, an issue previously decided in a case is binding on the parties at later stages of the case. There are three narrow exceptions to that doctrine, each of which requires truly exceptional circumstances. The State invokes one of those exceptions, for the situation where a court's prior decision is clearly erroneous and applying the decision would work a manifest injustice. But here there is no error, let alone a clear and obvious error, and the State never attempts to show a manifest injustice. The State also asks the Court to create a new exception for preliminary-injunction appeals, but that would be contrary to many decisions of this Court (and the other courts of appeals), and it would not make sense. In any event, even if one of the exceptions to the law-of-the-case doctrine applied, the Court's prior holding still would be binding circuit precedent, for which there is no exception.

II.    In any event, the Court's prior decision is correct. This Court carefully applied settled Supreme Court law for determining whether a federal statute may be enforced under Section 1983, and its holding is consistent with the holdings of the vast majority of federal courts to have considered the issue.

The State argues that the Court's prior decision is wrong, relying primarily on the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980). But this Court already has explained that *O'Bannon* concerned a different question than the one here, and so it has no

14

bearing on this case. The State also makes a variety of other arguments that this Court previously has rejected. There is no reason for this Court to revisit its careful and thorough opinion.

The judgment of the district court should be affirmed.

## ARGUMENT

The Medicaid Act's free-choice-of-provider provision states that "any individual eligible for medical assistance" "may obtain such assistance from any institution" that is "qualified to perform the service or services required" and "undertakes to provide [the individual] such services." 42 U.S.C. § 1396a(a)(23)(A).

In the previous appeal in this case, this Court issued a precedential decision interpreting that provision. It held that the free-choice-of-provider provision can be enforced under 42 U.S.C. § 1983. The only question in this appeal is whether that prior holding is binding on the Court. It is binding (and correct).

## I. The Court Is Bound By Its Precedential Decision Holding That The Free-Choice-of-Provider Provision Is Privately Enforceable

### A. The Court Previously Decided The One Issue Presented In This Appeal

In the prior appeal in this case, the Court thoroughly considered and decided the issue the State now seeks to present. That issue is a purely legal, statutory-interpretation issue: whether 42 U.S.C. § 1396a(a)(23)(A),

the free-choice-of-provider provision, is enforceable under 42 U.S.C. § 1983. JA229. After a lengthy and careful analysis, the Court concluded that "Congress unambiguously intended to create a private right of action in [Medicaid's] free-choice-of-provider provision." JA239.

The issue arose in the context of a preliminary injunction, but there was nothing preliminary or tentative about the Court's ruling. It was a definitive statutory interpretation based on the "plain, direct language" of the statute and with full consideration of the relevant Supreme Court precedents. JA229, JA235. The Court did not hold that the statute *likely* creates a private right of action; it held that it *does* create a private right of action. JA239. And the Court was emphatic; it characterized the statute as "unmistakably" clear, and found it "difficult to imagine a clearer or more affirmative directive." JA235-36. Then, after deciding that issue, the Court went on to separately consider and reject the State's defense on the merits (that it could terminate PPSAT for any reason at all, even though PPSAT is a qualified provider), JA239-49, and to address the other preliminary-injunction factors, JA249-51.

The State attempts (Br. 18) to shrug off the Court's holding as "some . . . language" incidental to the "primary question" of likelihood of success on appeal. But the Court's statutory-interpretation holding was not "some language"; the Court decided the issue as a matter of law. *See* JA226

16

(whether the statute is privately enforceable "is a matter of statutory interpretation"); JA228 (district court's conclusion that statute is privately enforceable was a "conclusion[] of law" that this Court reviewed *de novo*).

And the State itself previously acknowledged that. When the State sought review of this Court's decision in the U.S. Supreme Court, it told the Supreme Court that this Court "held that Medicaid recipients have" "a private right of action . . . under 42 U.S.C. § 1396a(a)(23) and § 1983." Pet. 11, *Baker v. Edwards*, 141 S. Ct. 550 (2020) (No. 19-1186), 2020 WL 1531252, at *11 (internal quotation marks omitted). The State's certiorari-stage briefing was insistent that this Court finally decided that issue. *See* Cert. Reply Br. 1, *Baker v. Edwards*, 141 S. Ct. 550 (2020) (No. 19-1186), 2020 WL 5578819, at *1 ("[W]hile this Court frequently denies petitions in an interlocutory posture when there is still work left to be done in the lower courts, that is not the case here."); Pet. Supp. Cert. Br. 1, *Baker v. Edwards*, 141 S. Ct. 550 (2020) (No. 19-1186), 2020 U.S. S. CT. BRIEFS LEXIS 7100, at *1 (The "Fourth Circuit has already opined" on this "legal issue.").

To be sure, a published decision in a preliminary-injunction appeal does not always result in a precedential ruling on a legal issue, as the cases cited by the State illustrate (Br. 15-16). Sometimes, an appellate court reverses a preliminary injunction without deciding likelihood of success on the merits, because another factor (whether the plaintiff is likely to suffer irreparable harm, whether the balance of equities favor the plaintiff, or

whether an injunction serves the public interest) is dispositive. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And sometimes an appellate court decides likelihood of success on the merits without resolving any legal issue. For example, the court could consider "the limited record at th[e] preliminary stage" and decide only whether one party is *likely* to prevail. *Roe v. Dep't of Def.*, 947 F.3d 207, 224 (4th Cir. 2020).

But this case is different. The Court recognized that, before it could address the merits of Ms. Edwards' Medicaid Act claim, it had to decide whether she can sue at all under that provision. JA229. The Court held that she can, JA229-39, and nothing about that decision was preliminary.

## B.     The Court's Prior Holding Is Binding Circuit Precedent

It is well-established that a "decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020). In other words, "one panel cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc). So in this appeal, the Court is bound to follow its prior holding that the Medicaid Act's free-choice-of-provider provision is privately enforceable under Section 1983. The district court recognized that in its summary-judgment decision: "[I]n the Fourth Circuit, . . . as a matter of

law," Medicaid patients "may seek to enforce the free-choice-of-provider pro-vision." JA295.

The State had argued that the Court's decision was "incorrect[]" and had urged the district court to reject it. JA298; *see* S.C. Summ. J. Br. 9. The district court refused to do so, explaining: "The Court is required to follow Fourth Circuit precedent, and no argument . . . will persuade the Court oth-erwise." JA298.

The State's brief does not acknowledge that the Court's prior decision created binding circuit precedent. Instead, it focuses exclusively on the law-of-the-case doctrine, and argues that under that doctrine, an appellate court can "revisit[] . . . rulings in [a] prior panel opinion" in certain circumstances. Br. 12. But there is no exception that allows a panel of the Fourth Circuit to disregard binding circuit precedent. A panel of the court of appeals is bound to follow the ruling of a prior panel, and the only way to change the law is for the circuit to rehear the issue en banc, or for the Supreme Court to decide the issue to the contrary. *Dodge*, 963 F.3d at 383.

This Court has recognized that critical difference between law of the case and circuit precedent. It explained that, whereas a litigant seeking to "overcome the law of the case . . . must show" that one of the exceptions is present, persuading the Court "to ignore a prior panel's holding" in a prece-dential decision requires an "in banc overruling or a superseding contrary

19

decision of the Supreme Court." *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 n.5 (4th Cir. 2017).[5]

Other courts of appeals likewise have recognized that basic distinction. For example, the Ninth Circuit held that even when "one of the exceptions to law of the case" would allow a panel to "revisit[]" an earlier decision, the panel "still would . . . be[] bound by that published opinion as the law of the circuit." *United States v. Washington*, 593 F.3d 790, 798 n.9 (9th Cir. 2010) (en banc). Other circuits have made the same point. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1292 (11th Cir. 2005) ("Because our previous decision was published, the prior panel precedent rule" – in addition to law of the case – "applies to any holdings reached in the earlier appeal."); *Craft v. United States*, 233 F.3d 358, 369 (6th Cir. 2000) ("[T]his panel may not conduct a plenary review of the result reached by a prior panel" in the same case.), *rev'd on other grounds*, 535 U.S. 274 (2002); *Ackerley Commc'ns of Mass., Inc. v. City of Cambridge*, 135 F.3d 210, 217

---

[5] In some cases, when this Court has applied a holding from an earlier appeal in the case, it cited only the law-of-the-case doctrine, and not the law-of-the-circuit doctrine. *See, e.g., L.J. v. Wilbon*, 633 F.3d 297, 308 (4th Cir. 2011); *U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1995). But nothing in those cases suggests that the law-of-the-circuit rule did not apply as well.

n.10 (1st Cir. 1998) ("[R]econsider[ing] our holding" from a prior appeal in the same case "is beyond our prerogatives.").[6]

The State's position makes no sense. Under its view, a precedential panel decision would be binding in all pending and subsequent cases in the Circuit except for one – the very case in which that decision was rendered. That would be an absurd result. And such a rule would disserve the judicial system and the public interest, because it would undermine the predictability and even-handed application of circuit law. *See McMellon*, 387 F.3d at 332 ("[T]he binding effect of a panel opinion on subsequent panels is of utmost importance to the operation of this court and the development of the law in this circuit."). The Court therefore should follow its prior holding because it is binding circuit precedent.

## C. The Court's Prior Holding Also Is Binding Law of the Case

A separate reason the Court should follow its prior statutory interpretation holding is because it is the law of the case. "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in

---

[6] The rule is different when a panel of this Court issues an *unpublished* opinion, which does "not constitute binding authority" in the Fourth Circuit. *Ham v. Breckon*, 994 F.3d 682, 693 (4th Cir. 2021); *see* 4th Cir. R. 36(b). In that circumstance, only the law-of-the-case doctrine would apply. *See Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997).

21

the same case." *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (internal quotation marks omitted). That rule "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting 1B James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.404[1], at 118 (1984)).

The Court's holding that the free-choice-of-provider statute is privately enforceable is law of the case and "must be followed in all subsequent proceedings" unless one of three narrow exceptions applies. *Everett v. Pitt Cnty. Bd. of Educ.*, 788 F.3d 132, 142 (4th Cir. 2015). Those exceptions are when "(1) a subsequent trial produces substantially different evidence"; "(2) controlling authority has since made a contrary decision of law applicable to the issue"; or "(3) the prior decision was clearly erroneous and would work manifest injustice." *Id.* Those exceptions apply only in truly "exceptional circumstances," *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999), and are construed narrowly "in order to create stability and integrity in the law," *McMellon*, 387 F.3d at 355.

The State does not contend that either the first or second exception applies. Nor could it. There was no "subsequent trial" after the preliminary-injunction decision that produced "substantially different evidence," *Everett*, 788 F.3d at 142; this case was decided on summary judgment based

22

on undisputed facts, JA295.  And neither the Supreme Court nor the en banc Fourth Circuit has issued any contrary intervening decision.

Instead, the State appears to invoke the third exception, Br. 18-21, and also asks the Court to recognize a fourth exception for preliminary-injunction appeals, Br. 14-18.  Neither argument has merit.

### 1. The Court's prior holding was not clearly erroneous and would not work a manifest injustice

The State's primary argument is that the Court's prior holding was wrong.  It contends that this Court "misappli[ed] . . . binding Supreme Court holdings" for determining when a statute creates a private right of action and "misinterpret[ed] . . . congressional intent" when interpreting the statute.  Br. 18-21.  That argument appears to be an attempt to satisfy the third exceptional circumstance, which permits departure from the law of the case only where the earlier decision was clearly erroneous and its application would work a manifest injustice.

The "high burden" for demonstrating clear error and manifest injustice requires far more than a showing that the prior decision was "maybe or probably wrong."  *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).  Rather, the prior decision must, as this Court has colorfully put it, "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018).

23

To try to establish that the Court's previous decision was wrong, the State claims that this Court misapplied Supreme Court decisions about when statutes should be read to create private rights of action. But the State merely repeat the arguments it made to the panel unsuccessfully the last time around. S.C. PI C.A. Br. 21-34. The Court considered those arguments at length in the preliminary-injunction decision. JA229-49. The Court recognized that it was "not at liberty to imply private rights of action willy-nilly," JA236-37, and reached the conclusion it did only because it found the statute "unambiguous" and "unmistakably" clear, JA218, JA237. No judge dissented. There was no error, let alone clear error.

The State contends (Br. 19) that the Court's prior decision was clearly erroneous because the Fifth Circuit reached the "opposite conclusion" on the same issue. But this Court's decision is consistent with the holdings of the vast majority of federal courts that have considered the issue.[7] And even

---

[7]  The majority of the courts of appeals that have considered the issue have agreed with this Court. *See Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205, 1224 (10th Cir. 2018); *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 965-66 (9th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 968, 972-74 (7th Cir. 2012); *see also Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006). *But see Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020); *Does v. Gillespie*, 867 F.3d 1034, 1046 (8th Cir. 2017).

The vast majority of district courts that have considered the issue reached the same conclusion. *Miracles House Inc. v. Senior*, No. 17-cv-

taking the State's characterization at face value, another court weighing in

on the other side of an inter-circuit disagreement does not establish clear

---

23582, 2017 WL 5291139, at *3 (S.D. Fla. Nov. 9, 2017); *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Smith*, 236 F. Supp. 3d 974, 978 (W.D. Tex. 2017), *vacated sub nom. Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020); *Planned Parenthood Se., Inc. v. Dzielak*, No. 3:16-cv-454, 2016 WL 6127980, at *1 (S.D. Miss. Oct. 20, 2016), *appeal docketed*, No. 16-60773 (5th Cir. Nov. 21, 2016); *Planned Parenthood of Kan. & Mid-Mo. v. Mosier*, No. 2:16-cv-2284, 2016 WL 3597457, at *15 (D. Kan. July 5, 2016), *aff'd in part, vacated in part sub nom. Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205 (10th Cir. 2018); *Bader v. Wernert*, 178 F. Supp. 3d 703, 718-20 (N.D. Ind. 2016); *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 637-42 (M.D. La. 2015), *aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *cert denied*, 139 S. Ct. 408 (2018); *Planned Parenthood Se., Inc. v. Bentley*, 141 F. Supp. 3d 1207, 1217 (M.D. Ala. 2015); *Planned Parenthood Ark. & E. Okla. v. Selig*, No. 4:15-cv-566, 2015 WL 13710046, at *6 (E.D. Ark. Oct. 5, 2015), *vacated sub nom. Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017); *Planned Parenthood Ariz., Inc. v. Betlach*, 922 F. Supp. 2d 858, 864 (D. Ariz.), *aff'd*, 727 F.3d 960 (9th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 794 F. Supp. 2d 892, 902 (S.D. Ind. 2011), *aff'd in part, rev'd in part*, 699 F.3d 962 (7th Cir. 2012); *G. ex rel. K. v. Haw. Dep't of Human Servs.*, No. 08-cv-551, 2009 WL 1322354, at *12 (D. Haw. May 11, 2009); *Women's Hosp. Found. v. Townsend*, No. 07-cv-711, 2008 WL 2743284, at *8 (M.D. La. July 10, 2008); *Kapable Kids Learning Ctr., Inc. v. Ark. Dep't of Human Servs.*, 420 F. Supp. 2d 956, 962 (E.D. Ark. 2005); *L.F. v. Olszewski*, No. 04-cv-73248, 2004 WL 5570462, at *7 (E.D. Mich. Nov. 1, 2004), *rev'd on other grounds and remanded sub nom. Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006); *Martin v. Taft*, 222 F. Supp. 2d 940, 979 (S.D. Ohio 2002). *But see M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1307 (D. Utah 2003).

error. *See United States v. Lewis*, 963 F.3d 16, 27 (1st Cir. 2020) (finding that error *cannot* be clear "[i]f a circuit conflict exists on a question"); *United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) (stating that a "circuit split *precludes* a finding of clear error" (emphasis added)). The State therefore has not come close to establishing clear error.

Further, the State must show not only that the Court clearly erred, but also that application of the Court's prior holding would work a manifest injustice. The State does not attempt to meet that standard; it never even uses the words "manifest injustice" in its brief. And there would be no manifest injustice here. To show a "manifest injustice," the State would have to show that there was something "fundamentally unfair" about following the controlling holding. *See Alexander S. v. Boyd*, 113 F.3d 1373, 1388 (4th Cir. 1997); *Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993).[8] Here, the parties each had a chance to present their arguments; the Court carefully considered the issues; and the Court reached the same conclusion as most other federal courts. Nothing about the process or the result was manifestly unfair. Indeed, it would be unfair to exempt the State from a holding of this Court that has been the law since 2019; that the State itself has acknowledged to the U.S. Supreme Court; and that everyone else in the Circuit has

---

[8]    Appellees are not aware of any decision in which this Court has declined to follow the law-of-the-case doctrine because doing so would work a manifest injustice.

to follow. *See Klay v. All Defendants,* 389 F.3d 1191, 1199 (11th Cir. 2004) ("[T]he law of the case doctrine provides stability and finality in litigation, which are crucial cornerstone values for developing a just and efficient judicial process.").

### 2. There is no exception to law of the case for legal holdings in preliminary-injunction appeals

The State also asks the Court to recognize a new exception to the law-of-the-case rule. Br. 14-18. It argues that when a contested legal issue is resolved during a preliminary-injunction appeal, that holding should not be considered law of the case because preliminary-injunction appeals do not concern "ultimate legal issues." Br. 14.

As an initial matter, that argument creates a goose-gander problem for the State. Its argument that the free-choice-of-provider provision is not privately enforceable relies almost exclusively on preliminary-injunction decisions from two other courts of appeals. *See* Br. 20-30. According to the State, those decisions contain "holding[s]" regarding the availability of a private right of action. Br. 7 (citing *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017)); Br. 11 (citing *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020) (en banc)). The State cannot characterize favorable preliminary-injunction decisions as "holdings" on legal issues, while at the same time characterizing this Court's prior unfavorable decision as merely preliminary.

27

In any event, the Court should reject the State's invitation to create a new exception to the law-of-the-case doctrine. Some preliminary-injunction appeals do not require resolution of legal issues, but some do. On appeal of a preliminary injunction, the scope of this Court's "review as to the applicable law" is "plenary." *Planned Parenthood of Blue Ridge v. Camblos*, 155 F.3d 352, 359 (4th Cir. 1998). Here, to determine the likelihood of PPSAT's success on the merits, this Court decided a "threshold question" of law regarding "whether the Medicaid Act's free-choice-of-provider provision creates a private right enforceable under § 1983." JA229. The Court was reviewing, *de novo*, a "conclusion[] of law" reached by the district court. JA228.

This Court has recognized that a legal conclusion reached in a preliminary-injunction appeal is binding. The decision in *L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011), is particularly instructive. In that case, the Court held, in a preliminary-injunction appeal, that a plaintiff had a private right of action. *Id.* at 301. In the subsequent appeal, the Court recognized that the prior holding was "the law of the case and [was] therefore presumptively controlling, absent proof to the contrary." *Id.* at 308 (quotation marks omitted). The same is true here. JA239. The other courts of appeals likewise

have held that a legal conclusion reached in the context of a preliminary-injunction appeal is law of the case.[9]

Against the weight of those authorities, the State asserts that the law-of-the-case rule is inapplicable "absen[t] . . . a 'final adjudication' in the prior appeal." Br. 18. It relies on the Supreme Court's statement that "it requires a *final judgment* to sustain the application of the rule of the law of the case." Br. 14 (quoting *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 199 (1950) (emphasis added)). The State misreads that language. The issue in *U.S. Smelting* was whether the district court's prior holding that no evidence supported a decision of the Interstate Commerce Commission

---

[9]  *See, e.g.*, *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607, 612 (1st Cir. 2021); *CFTC v. Walsh*, 658 F.3d 194, 199 n.4 (2d Cir. 2011); *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008); *St. Paul Mercury Ins. Co. v. Williamson*, 332 F.3d 304, 309 (5th Cir. 2003); *Howe v. City of Akron*, 801 F.3d 718, 740-741 (6th Cir. 2015); *Pearson v. Edgar*, 153 F.3d 397, 405 (7th Cir. 1998); *Entergy Ark., Inc. v. Nebraska*, 241 F.3d 979, 987 (8th Cir. 2001); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007); *Fish v. Schwab*, 957 F.3d 1105, 1139-1141 (10th Cir. 2020); *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1360 (11th Cir. 2014); *Sherley v. Sebelius*, 689 F.3d 776, 780-783 (D.C. Cir. 2012); *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697-98 (Fed. Cir. 2001); *see also* 18B Edward H. Cooper, *Federal Practice & Procedure* § 4478.5 & n.6 (2d ed. 2020) (stating the general rule that a "fully considered appellate ruling on an issue of law made on a preliminary injunction appeal" is "law of the case for further proceedings in the trial court on remand and in any subsequent appeal," and collecting cases).

29

(ICC) was law of the case in light of the fact that the district court had re-manded the case to the ICC. *U.S. Smelting*, 339 U.S. at 198. The Supreme Court held that the law-of-the-case doctrine did not apply, because "all questions" regarding the evidence "were still open" "when the case was first remanded." *Id.* The Court did not decline to apply the law-of-the-case doctrine because of lack of a final judgment. The Court's statement that law of the case would apply after a "final judgment" referred only to the scenario it confronted, where "nothing [had been] finally decided" in the first appeal, yet one party was arguing that law of the case precluded consideration of the merits of an issue. *Id.* at 198-99.[10]

Later decisions of the Supreme Court have recognized that the law-of-the-case rule can apply before a final judgment. *See, e.g.*, *Christianson*, 486 U.S. at 815-16 (observing that "[f]ederal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts," which typically are made at the outset of a case); 18B Edward H. Cooper, *Federal Practice & Procedure* § 4478 & n.14 (2d ed. 2020) (citing *Christianson*, and noting

---

[10] The State also relies (Br. 14) on the statement in *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), that "conclusions of law made by a court granting a preliminary injunction are not binding at trial." That statement is about preliminary-injunction decisions where the parties have not had "a full opportunity to present their cases" and the court did not decide "the actual merits" of the issue. *Id.* at 396. This case is different; the parties fully briefed a pure question of law, and the Court definitively decided it.

that law-of-the-case rules "regulate judicial affairs before final judgment"). As a leading commentator has explained, "it is clear that" the reference to a "final judgment" in *U.S. Smelting* "cannot refer to the technical concepts of finality applied to . . . appeal jurisdiction." 18B *Federal Practice & Procedure* § 4478.5. For that reason, "[c]ases generally have not relied on *Smelting* to limit law of the case to a decision on appeal from a final judgment." *In re Oil Spill by Amoco Cadiz Off Coast of Fr. on Mar. 16, 1978*, 954 F.2d 1279, 1292 (7th Cir. 1992). The Court thus should follow its prior holding.

## II. This Court's Prior Private-Right-Of-Action Holding Is Correct

### A. The Medicaid Act's Free-Choice-Of-Provider Provision Is Privately Enforceable

The Supreme Court has identified several factors to help determine whether a federal statute creates a right enforceable under Section 1983. The Court asks (1) whether Congress clearly "intended that the provision in question benefit the plaintiff"; (2) whether the asserted right is "not so vague and amorphous that its enforcement would strain judicial competence"; and (3) whether the obligation created by the statute is "mandatory." *Blessing*, 520 U.S. at 340-41 (internal quotation marks omitted); *see Gonzaga*, 536 U.S. at 284-85. If those factors are satisfied, then the statute presumptively creates a private right of action. *Blessing*, 520 U.S. at 341. If Congress has expressly or impliedly evidenced an intention to foreclose

31

private enforcement, then the presumption of private enforcement is rebutted. *Gonzaga*, 536 U.S. at 284-85 & n.4.

In the preliminary-injunction decision, this Court correctly identified (JA229) and applied (JA230-39) those factors. First, the court concluded that the plain text of the statute "unambiguously gives Medicaid-eligible patients an individual right to their choice of provider." JA230 (internal quotation marks omitted). The statute specifically defines the intended class of beneficiaries in individualized terms ("any individual eligible for medical assistance" under Medicaid) and gives them a particular right (the right to "obtain such assistance" from any qualified and willing provider). JA225, JA230-31. There is no question *who* Congress intended to benefit in this statute, or *what* benefit Congress intended to give them. *Id.*; *see* JA 230 (noting that "Congress's use of the phrase 'any individual'" is a "prime example of the kind of rights-creating language required to confer" a private right of action).

Second, the Court determined that Congress defined the right using clear and administrable terms. JA231-32. The statute provides that an individual has a right to use any willing provider that is "qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23)(A). As the Court explained, "qualified to perform the service or services required" has a clear ordinary meaning – "professionally fit to perform the medical services the patient requires." JA239; *see* JA231. This Court noted that courts

decide similar questions of professional competence every day. JA231-32, JA239-45; *see* JA231 (court could look to "descriptions of the service required; state licensing requirements; the provider's credentials, licenses, and experience; and expert testimony"). And the Court found that deciding the issue would be particularly easy in this case, because the State "does not contest the fact that PPSAT is professionally qualified to deliver the services that the individual plaintiff seeks." JA240; *see* JA232 n.3 ("PPSAT's qualifications are simply not in dispute.").

Third, the Court determined that the free-choice-of-provider provision "unambiguously impose[s] a binding obligation on the States" because it uses mandatory language. JA232 (quoting *Blessing*, 520 U.S. at 341). The statute specifies that States "must" include the free-choice-of-provider right in their Medicaid plans. *Id.* (quoting 42 U.S.C. § 1396a(a)(23)(A)).

Finally, the Court found no indication in the statutory text that Congress intended to foreclose a Section 1983 remedy. JA232-36. "[N]owhere in the Medicaid Act did Congress declare an express intent to" foreclose a Section 1983 remedy. JA232. And no such intent can be implied, because the statute lacks a comprehensive enforcement scheme that would indicate that Congress did not intend for individual enforcement under Section 1983. JA232, JA234 (citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 521-22 (1990)).

The Court was "especially cautious" before "finding that a provision in Spending Clause legislation, such as the Medicaid Act, creates a private

right enforceable under § 1983." JA238. But, the Court concluded, the statute here is exceptionally clear. All three judges agreed that the free-choice-of-provider provision "*unambiguously* creates a private right in favor of the individual plaintiff." JA239 (emphasis added); *see* JA252 (Richardson, J., concurring). It was not a close call: The Court found it "difficult to imagine a clearer or more affirmative directive" than in the statute here. JA225.

## B. The State's Counterarguments Lack Merit

For the most part, the State simply repeats arguments that this Court already rejected in the prior appeal. Br. 22-30. It also relies on decisions from two other courts of appeals, one of which this Court already considered. Br. 12, 22-30. None of the State's arguments justifies the Court reversing its prior holding.

### 1. *O'Bannon* did not address private rights of action under Section 1983

The State's primary argument is that this Court wrongly "dismiss[ed]" the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center, supra.* Br. 22-27. The State relies on the Fifth Circuit's recent decision in *Planned Parenthood of Greater Texas Family Planning & Preventative Health Services, Inc. v. Kauffman, supra*, which treated *O'Bannon* as controlling. Br. 24-26. The State and the Fifth Circuit are wrong: *O'Bannon* did not decide the question here. This Court previously recognized that,

34

JA244-45; the dissenting judges in the Fifth Circuit explained that, *Kauffman*, 981 F.3d at 398 (Dennis, J., dissenting); and even the Eighth Circuit (which agreed with the State on the bottom line) did not treat *O'Bannon* as controlling, *Gillespie*, 867 F.3d at 1046.

The question in this case is whether a private party can sue under Section 1983 to enforce the Medicaid Act's free-choice-of-provider provision. That is a threshold question about *who* can enforce a provision – whether a party can get into court to present its claim. *O'Bannon*, in contrast, addressed whether Medicaid recipients had a procedural-due-process right to a hearing before the State closed a nursing home. 447 U.S. at 784. That is a question about whether the State's action violated the patients' due-process rights – *i.e.,* whether the claim presented could succeed on its merits. *O'Bannon* did not present any question about ability to sue under Section 1983. No plaintiff sued under Section 1983, *see id.* at 778-79, and the Court's opinion does not even mention Section 1983. That is why, as this Court previously recognized, JA244-45, *O'Bannon* is inapposite here.

The State's argument is premised on a single sentence of *O'Bannon*. The Court stated that, "while a patient has a right to continued benefits to pay for care in the qualified institution of his choice, . . . he has *no enforceable expectation* of continued benefits to pay for care in an institution that has been determined to be unqualified." Br. 23 (quoting *O'Bannon,* 447 U.S. at 786 (emphasis added by State)); *see* Br. 25-26. That statement does not

refer to the question here (enforcement under Section 1983); the Court did not refer to Section 1983 at all.

Instead, the statement was made in the context of the Court evaluating the merits of the patients' due-process argument. The patients argued that, under the Due Process Clause, they were entitled to a hearing before the State closed their nursing home. *O'Bannon,* 447 U.S. at 784. The Supreme Court noted that, in order to have a due-process right to a hearing, the State had to be depriving the patients of a protected liberty or property right. *Id.* The patients argued that the Medicaid Act's free-choice-of-provider provision supplied that right. *Id.* The Supreme Court rejected that argument because the nursing home was unqualified: "[W]hile a patient has a right to continued benefits to pay for care in the *qualified* institution of his choice, he has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be *unqualified*." *Id.* at 786 (emphases added).

None of this discussion is relevant to this appeal, because the only issue here is the threshold question whether the free-choice-of-provider right is enforceable under Section 1983. The State does not make any argument on appeal about the *scope* of that right. That is, the State has not challenged the district court's merits holding that the State's termination decision violates the Medicaid Act's free-choice-of-provider provision. The State did make such an argument before: In the prior appeal, the State

36

argued that even if Ms. Edwards can sue to enforce the free-choice-of-pro-vider provision under Section 1983, her claim should fail on the merits be-cause the State can deem PPSAT unqualified for any reason. S.C. PI C.A. Br. 34-38. This Court considered and rejected that argument. JA239-43. On remand, the State did not present that argument to the district court in its summary-judgment brief, and it does not present that argument to the Court in this appeal. So the only question before the Court is whether Ms. Edwards can sue under Section 1983.

Even if the merits of the termination decision were at issue, *O'Bannon* would not help the State. *O'Bannon* concerned a constitutional challenge under the Due Process Clause; this case concerns a statutory challenge un-der the free-choice-of-provider provision. In addition, the key fact in *O'Ban-non* was that the nursing home was unqualified. The federal government had decertified that facility, and the State was implementing that decision, as a federal regulation required it to do. *O'Bannon*, 447 U.S. at 776-77 & nn.3-4; *see* JA244. Here, everyone agrees that PPSAT *is* a qualified and willing provider. JA218, JA232 n.3 (noting that PPSAT's "qualifications are simply not in dispute" and it was excluded from Medicaid "for reasons un-related to professional competency"). For that situation, *O'Bannon* says that patients *do* have a statutory right: The free-choice-of-provider provi-

sion "gives recipients the right to choose among a range of *qualified* provid-
ers, without government interference." 447 U.S. at 785; *see id.* at 785 n.18.
So *O'Bannon* is neither relevant nor helpful to the State.

### 2.      The State's other arguments lack merit

The State offers several additional criticisms of this Court's prelimi-
nary-injunction decision, Br. 22-30, merely repeating arguments already
made in that appeal, S.C. PI C.A. Br. 22-34. None of them has merit.

First, the State claims that this Court "mostly ignored" *Gonzaga Uni-
versity v. Doe*. Br. 27-29. That is incorrect; the Court's decision discussed
*Gonzaga* extensively. *See* JA228, JA230-31, JA234, JA237-39. This Court
repeatedly noted *Gonzaga*'s principal teaching – that a statute must "un-
ambiguously confer" a private right for that right to be enforceable under
Section 1983, 536 U.S. at 283-85. JA228, JA230, JA234, JA238-39. Fur-
ther, the Court recognized that it "should not freely infer private rights of
action," and it only did so here based on the "plain and narrow text of the
free-choice-of-provider provision." JA236-37. The State's claim that this
Court did not apply *Gonzaga* simply ignores the actual opinion.[11]

---

[11] The State suggests (Br. 27-29) that the Supreme Court abandoned *Bless-
ing* in *Gonzaga*. Far from it. The *Gonzaga* Court repeatedly cited *Blessing*
with approval, and concentrated its analysis on the two *Blessing* factors rel-
evant in that case – the statute's lack of "rights creating" language and its
congressionally created enforcement mechanism. *Gonzaga*, 536 U.S. at 287-
89. Those same factors distinguish *Gonzaga* from this case.

Second, South Carolina asserts (Br. 29) that this Court "relied too heavily on" *Wilder v. Virginia Hospital Association*, *supra*. The preliminary-injunction decision cited *Wilder* for only one point – that "the Medicaid Act's administrative scheme is not sufficiently comprehensive to foreclose a private right of action enforceable under § 1983." JA234 (citing *Wilder*, 496 U.S. at 521-22). That point has not been called into question by the Supreme Court, *id.*; in fact, the Court cited *Wilder* for that point in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 122 (2005). To the extent the Court has questioned other parts of *Wilder*, this Court accounted for that when it noted that "*Gonzaga* cut back on *Wilder*'s treatment of implied rights of action in the § 1983 context," and then cited *Wilder* only for the narrow point about "the comprehensiveness of the Medicaid Act's enforcement scheme." JA234.

Third, South Carolina reads *Armstrong v. Exceptional Child Center, Inc.*, *supra*, to foreclose private enforcement of any part of the Medicaid Act. Br. 29. That is wrong for several reasons. As an initial matter, *Armstrong* did not address whether the plaintiffs there could sue under Section 1983; the issue was whether they could imply a right of action under the Supremacy Clause or using general principles of equity. *Armstrong*, 575 U.S. at 324-29. And unlike Section 1396a(a)(23), the provision in *Armstrong*, 42 U.S.C. § 1396a(a)(30)(A), did not describe an individual right in specific and administrable terms, *see* JA231 ("Courts can readily determine whether a

39

provider is qualified to perform a service." (internal quotation marks omitted)). To the extent *Armstrong* addressed the issue, it said the *opposite* of what South Carolina claims. 575 U.S. at 328 ("The provision for the Secretary's enforcement by withholding funds" did not "*by itself* . . . preclude the availability of equitable relief" through individual enforcement actions.).

The State also relies on the Eighth Circuit's decision in *Does v. Gillespie*, *supra*. This is just a rehash of previous arguments; as the State admits, this Court already considered that decision in the preliminary-injunction appeal. Br. 7 (citing JA230, JA236). In any event, the Eighth Circuit failed to follow the Supreme Court's guidance to focus on whether the specific language at issue includes the necessary "rights-creating language." *Gonzaga*, 536 U.S. at 290. Rather than analyze the specific text of 42 U.S.C. § 1396a(a)(23)(A), the Eighth Circuit instead focused on the fact that the provision exists within a set of requirements for state Medicaid plans. *Gillespie*, 867 F.3d at 1041. The Medicaid Act itself "foreclose[s]" that reasoning, JA237; it instructs that a provision of the Act "is not to be deemed unenforceable because of its inclusion in a section of [the Act] . . . specifying the required contents of a State plan," 42 U.S.C. § 1320a-2.

The Eighth Circuit also treated the mere possibility of federal enforcement as precluding private enforcement. But as this Court observed in the preliminary-injunction decision, Congress's decision to "[p]ermit[] private enforcement" of the free-choice-of-provider provision through Section 1983

40

"in no way interferes with the Secretary of HHS's authority to audit and sanction noncompliant state Medicaid plans." JA235 (internal quotation marks omitted).

Finally, the Eighth Circuit's decision also is out of step with its own precedent and this Court's precedent. In other private-right-of-action cases, the Eighth Circuit has faithfully applied the factors set out in *Blessing* and *Gonzaga*, *see, e.g.*, *Spectra Comm'cns Grp. v. City of Cameron, Mo.*, 806 F.3d 1113, 1120 (8th Cir. 2015); *Lankford v. Sherman*, 451 F.3d 496, 508-09 (8th Cir. 2006), and has recognized that provisions in the Medicaid Act can be privately enforceable, *see Ctr. for Special Needs Tr. Admin. v. Olson*, 676 F.3d 688, 699 (8th Cir. 2012). This Court has done the same. *See, e.g.*, *Carey v. Throwe*, 957 F.3d 468, 479 (4th Cir. 2020). There is thus no reason for this Court to revisit its prior holding that the free-choice-of-provider provision is enforceable under Section 1983.

41

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,

Nicole A. Saharsky
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Alice Clapman
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4909
alice.clapman@ppfa.org

M. Malissa Burnette
Kathleen McDaniel
BURNETTE, SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
Columbia, SC 29201
(803) 904-7913

*Counsel for Appellees Planned Parenthood South Atlantic and Julie Edwards*

Dated:  May 28, 2021

42

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would not be helpful in deciding this appeal because this Court's prior precedential decision in this case already has decided the one issue in this case, namely, whether the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers a right enforceable under 42 U.S.C. § 1983. *See Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687 (4th Cir. 2019).

43

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Appellees certifies that this brief:

(i)     complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 9727 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii)     complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  May 28, 2021                    */s/ Nicole A. Saharsky*

44