No. 21-1043

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

PLANNED PARENTHOOD SOUTH ATLANTIC; JULIE EDWARDS,
on her behalf and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

ROBERT M. KERR, in his official capacity as Director, South
Carolina Department of Health and Human Services,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the District of South Carolina (Columbia)
The Honorable Mary G. Lewis
Case No. 3:18-cv-02078-MGL

---

## REPLY BRIEF OF APPELLANT

---

KELLY M. JOLLEY
ARIAIL B. KIRK
JOLLEY LAW GROUP, LLC
P.O. Box 50529
Columbia, SC 29250
(803) 809-6500
kjolley@jolleylawgroup.com
akirk@jolleylawgroup.com

JOHN J. BURSCH
BURSCH LAW, PLLC
9339 Cherry Valley Ave SE #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ...........................................................................1

ARGUMENT ................................................................................1

I.    Edwards's claim is moot if she still has not sought to obtain healthcare from Planned Parenthood. ...............................................1

II.   The panel's earlier errors are not binding on this Court in this appeal, and the Court should correct them. ....................................8

      A.    When the Court hears a second or subsequent appeal in the same case, the law of the circuit does not prevent the Court from correcting the prior panel's mistakes. .................8

      B.    The law-of-the-case doctrine is discretionary, and fealty to it does not justify flaunting Congress's intent and binding Supreme Court precedent. .......................................13

            1.    In *Sejman*, this Court correctly held that the law-of-the-case doctrine cannot trump Congress's intent. ........................................................14

            2.    *O'Bannon* held that Congress did not create the private right Edwards asserts here—and without a private right, she has no private right of action. .....18

            3.    Edwards misreads *O'Bannon* and mostly just repeats the prior panel decision. ..................................21

CONCLUSION ............................................................................23

CERTIFICATE OF COMPLIANCE .....................................................25

CERTIFICATE OF SERVICE ............................................................26

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.M. v. Holmes,*
   830 F.3d 1123 (10th Cir. 2016) ........................................................... 18

*American Canoe Association v. Murphy Farms, Inc.,*
   326 F.3d 505 (4th Cir. 2003) ..................................................... passim

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ................................................................... 2, 7

*Armstrong v. Exceptional Child Center, Inc.,*
   575 U.S. 320 (2015) ..................................................................... 22

*Bain v. California Teachers Association,*
   891 F.3d 1206 (9th Cir. 2018) ........................................................... 6

*Bayer v. Neiman Marcus Group, Inc.,*
   861 F.3d 853 (9th Cir. 2017) ......................................................... 5, 6

*Bridger Coal Company v. Director, Office of Workers' Compensation Programs,*
   669 F.3d 1183 (10th Cir. 2012) ......................................................... 16

*Capital Investors Co. v. Executors of Morrison's Estate,*
   584 F.2d 652 (4th Cir. 1978) ................................................. 1, 8, 12, 23

*Clapper v. Amnesty International USA,*
   568 U.S. 398 (2013) ...................................................................... 1

*Columbus-America Discovery Group v. Atlantic Mutual Insurance Company,*
   203 F.3d 291 (4th Cir. 2000) ............................................................ 8

*Deakins v. Monaghan,*
   484 U.S. 193 (1988) ...................................................................... 2

*Fox v. Board of Trustees of State University of New York,*
   42 F.3d 135 (2d Cir. 1994) ............................................................ 5, 6

*Friedman's, Inc. v. Dunlap*,
   290 F.3d 191 (4th Cir. 2002).................................................................4

*Gonzaga University v. Doe*,
   536 U.S. 273 (2002)..........................................................................22

*Gonzalez v. Arizona*,
   677 F.3d 383 (9th Cir. 2012).............................................................17

*Hall v. Beals*,
   396 U.S. 45 (1969).............................................................................4

*Iron Arrow Honor Society v. Heckler*,
   464 U.S. 67 (1983).............................................................................6

*Jeffries v. Wood*,
   114 F.3d 1484 (9th Cir. 1997)...........................................................17

*L.J. v. Wilbon*,
   633 F.3d 297 (4th Cir. 2011).............................................................10

*LaShawn A. v. Barry*,
   87 F.3d 1389 (D.C. Cir. 1996)............................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................1, 7

*McMellon v. United States*,
   387 F.3d 329 (4th Cir. 2004).............................................................10

*Mellen v. Bunting*,
   327 F.3d 355 (4th Cir. 2003)........................................................1, 2, 7

*Messenger v. Anderson*,
   225 U.S. 436 (1912)............................................................................8

*Monahan v. Nebraska*,
   687 F.2d 1164 (8th Cir. 1982).............................................................6

*O'Bannon v. Town Court Nursing Center*,
   447 U.S. 773 (1980)................................................................. passim

*Owens v. Stirling,*
  967 F.3d 396 (4th Cir. 2020).............................................................8, 13

*Planned Parenthood of Greater Texas Family Planning &*
  *Preventative Health Services, Inc. v. Kauffman,*
  981 F.3d 347 (5th Cir. 2020)........................................................ passim

*Scott v. Pasadena Unified School District,*
  306 F.3d 646 (9th Cir. 2002)...................................................................4

*Sejman v. Warner-Lambert Company, Inc.,*
  845 F.2d 66 (4th Cir. 1988)...................................................... 13, 14, 15

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional*
  *Planning Agency,*
  216 F.3d 764 (9th Cir. 2000)................................................................17

*U.S. Bancorp Mortgage Company v. Bonner Mall Partnership,*
  513 U.S. 18 (1994)...................................................................................7

*U.S. Department of Housing & Urban Development v. Cost Control*
  *Marketing & Sales Management of Virginia, Inc.,*
  64 F.3d 920 (4th Cir. 1995)..................................................................10

*United States v. American Insurance Company,*
  852 F.2d 566 (4th Cir. 1988).................................................................16

*United States v. Dodge,*
  963 F.3d 379 (4th Cir. 2020).................................................................10

*United States v. Munsingwear, Inc.,*
  340 U.S. 36 (1950)...................................................................................7

*United States v. U.S. Smelting Refining & Mining Company,*
  339 U.S. 186 (1950)...............................................................................21

*United States v. Uccio,*
  940 F.2d 753 (2d Cir. 1991) ...........................................................17, 18

## <u>Treatises</u>

16 Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE
    JURISPRUDENCE § 3938 (3d ed.) .......................................................... 11

18B Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE
    JURISPRUDENCE § 4478.2 (2d ed.) ............................................... passim

18B Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE
    JURISPRUDENCE § 4478.5 (2d ed.) .................................................... 20

**INTRODUCTION**

In every case, this Court's "ultimate responsibility . . . is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Edwards urges the Court to disregard binding Supreme Court precedent and double down on an interpretation of federal law contrary to Congress's intent. But neither the law of the circuit nor the law of the case requires that unjust result.

Edwards's claims may have become moot since she filed her complaint because it appears she still has not tried to obtain healthcare from Planned Parenthood; but if not, this Court should use its "inherent power" to correct its earlier mistakes. *Cap. Invs. Co. v. Ex'rs of Morrison's Est.*, 584 F.2d 652, 654 (4th Cir. 1978) (per curiam).

**ARGUMENT**

**I.    Edwards's claim is moot if she still has not sought to obtain healthcare from Planned Parenthood.**

Article III of the "Constitution limits this Court's jurisdiction to the adjudication of actual cases and controversies." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). And an Article III "injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

1

"The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action." *Mellen*, 327 F.3d at 363. "It is not enough that a controversy existed at the time the complaint was filed." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). A case becomes "moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Mellen*, 327 F.3d at 363 (cleaned up). For that reason, the Supreme Court has described mootness as "the doctrine of standing set in a time frame." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (cleaned up). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (cleaned up).

In her complaint filed almost three years ago, Edwards alleged that she lived in Barnwell County, South Carolina, and that on one prior occasion she had obtained healthcare at Planned Parenthood's Columbia clinic "even though it [was] 70 minutes away and time-consuming to get to." J.A. 60. Edwards added that the hospital in her county had "shut down." J.A. 59. And the "lack of available providers" in her area made it "especially difficult" for her to obtain health care because, due to her diabetes, she only felt "comfortable driving near [her] town" and never drove at night. *Id.* As a result, she had to rely on her mom to drive her to her appointments. *Id.*

2

According to her complaint, Edwards had "planned to shift all [her] gynecological and reproductive health care," including her "annual well woman exam," to Planned Parenthood's Columbia clinic until she had "heard that Planned Parenthood was being terminated from Medicaid." J.A. 61. At the time, she did "not have a back-up plan if [she could not] go to Planned Parenthood." *Id.* And she "want[ed] to participate in this lawsuit to speak on behalf of others across the state who choose Planned Parenthood as their provider." J.A. 62.

One month after Edwards filed her complaint, the district court granted her motion for a temporary restraining order and a preliminary injunction enjoining the Director "from terminating the Medicaid enrollment agreement of Planned Parenthood South Atlantic during the pendency of this action." J.A. 214. So the Director has not done anything to prevent Planned Parenthood's Columbia clinic from seeing Medicaid patients while this litigation has proceeded. Nonetheless— now almost three years after the district court entered its injunction— Edwards still only asserts that she "*intends* to obtain *future* health care" at Planned Parenthood. Edwards's Br. 6 (emphasis added). And according to the Director's records, the only Medicaid payments made to Planned Parenthood for services provided to Edwards were on July 9, 2018 —more than two weeks *before* Edwards filed her complaint. It appears Edwards has not sought to obtain healthcare from Planned Parenthood since, not even for her "annual well woman exam." J.A. 61.

Edwards's alleged future injury is not enough for her to maintain standing and defeat mootness. Her alleged "future injury" could satisfy Article III's injury-in-fact requirement "only if [she] is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (cleaned up). And "speculative contingencies afford no basis for . . . passing on the substantive issues." *Hall v. Beals*, 396 U.S. 45, 49 (1969) (per curiam). "When circumstances change from the time the suit is filed to the time of appeal, so that the appellate court can no longer serve the intended harm-preventing function or has no effective relief to offer, the controversy is no longer live and must be dismissed as moot." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (cleaned up).

It is not clear from Edwards's brief what changed circumstances might account for her failure to obtain healthcare from Planned Parenthood in the almost three years since the district court entered its injunction.[1] Edwards may have found another provider. The "lack of available providers" in her area contributed to her alleged need to

---

[1] Indeed, it is not even clear whether the statement in Edwards's brief that she merely "intends to obtain future health care there" accurately reflects a failure to obtain health care from Planned Parenthood in the intervening years or whether the statement is merely the product of inartful drafting. Edwards's Br. 6. If it is the latter, Edwards has the burden to correct the record to establish that her case is not moot.

obtain healthcare at Planned Parenthood when she filed her complaint. J.A. 59. But Edwards may have since moved to an area with more providers—obviating the need to use Planned Parenthood. Or her condition might have improved such that she's able to drive herself longer distances to her own appointments, opening up more providers from which to choose.

Whatever the explanation, Edwards's alleged *intent* to obtain healthcare from Planned Parenthood at some unknown *future* date is not enough. "The bare statement of intention is insufficient to escape mootness." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 143 (2d Cir. 1994). For example, in *Fox* the Second Circuit held that a student's suit against his university had become moot after he had "left the [university] system lacking two credits for graduation." *Id.* The student argued on appeal that the case was *not* moot because he still "intend[ed] to complete his studies at [the university]." *Id.* But the Second Circuit held that the student's "bare statement of intention [was] insufficient to escape mootness." *Id.*[2]

---

[2] *Accord, e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (while a "former employee *currently seeking* to be reinstated or rehired may have standing to seek injunctive relief against a former employer," a former employee's claim for injunctive relief is moot "absent a *reasonably certain basis* for concluding he or she has some personal need for prospective relief") (emphasis added).

Similarly, in *Monahan v. Nebraska*, the Eighth Circuit held that a student's claim had become moot when she married, moved to a new school district, and "voluntarily ceased attending classes." 687 F.2d 1164, 1168 (8th Cir. 1982). While the student "stated that she plan[ned] to move back . . . and continue her education," the court was "not told when this [would] occur." *Id.* "Whether it [would] ever actually happen [was] speculative, and therefore the issues she raises[d] about her proper educational placement [were] not yet ripe for adjudication." *Id.*

So too here. For whatever reason, it appears Edwards has chosen not to seek healthcare at Planned Parenthood. Whether she ever actually will obtain healthcare there remains speculative. Her "bare statement of intention is insufficient to escape mootness." *Fox*, 42 F.3d at 143. And if something (or someone) else is stopping her, she still would lack an "actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (per curiam) (in a lawsuit brought by a student organization against the HHS Secretary, holding that "the voluntary acts of a third party non-defendant," namely the university president, had mooted the case, *id.* at 72).

At best, Edwards's alleged intent raises a hypothetical possibility, not a "reasonably certain basis for concluding [that she] has some personal need for prospective relief." *Bayer*, 861 F.3d at 865. *Accord Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1214 (9th Cir. 2018) ("The

assertion that [the plaintiff] could *conceivably* return to her old job, without more, is precisely the type of speculative 'some day' intention the Supreme Court has rejected as insufficient to confer standing.") (quoting *Lujan*, 504 U.S. at 564).

"When a civil case becomes moot pending appellate adjudication, 'the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Off. Eng.*, 520 U.S. at 71 (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)) (cleaned up). "Vacatur is in order when mootness occurs through happenstance—circumstances not attributable to the parties—or [through] the 'unilateral action of the party who prevailed in the lower court.'" *Id.* at 71–72 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994)).[3] Accordingly, because there is no indication Edwards can establish that she followed through on her alleged intent to obtain healthcare from Planned Parenthood in the past three years, this Court should vacate the judgment below, vacate the prior panel decision, and remand with instructions to dismiss Edwards's claims as moot, ending this case.

---

[3] *Accord Mellen*, 327 F.3d at 365 ("Because Plaintiffs' claims for declaratory and injunctive relief have become moot through happenstance, we vacate the district court's judgment insofar as it awarded such relief.")

II. **The panel's earlier errors are not binding on this Court in this appeal, and the Court should correct them.**

A. **When the Court hears a second or subsequent appeal in the same case, the law of the circuit does not prevent the Court from correcting the prior panel's mistakes.**

For decades, panels of this Court have exercised their "discretion" under the law-of-the-case doctrine to decide whether to "change a prior ruling in the same case." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000). In these cases, the Court has consistently recognized that the law-of-the-case doctrine "is not absolute nor inflexible." *Cap. Invs. Co.*, 584 F.2d at 654. Treating the doctrine as "discretionary" rather than "mandatory" follows from the Supreme Court's recognition—more than a century ago—that "the law of the case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, *not a limit to their power*.'" *Owens v. Stirling*, 967 F.3d 396, 425 (4th Cir. 2020) (emphasis added) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). Thus, the law-of-the-case doctrine "does not and cannot limit the power of a court to reconsider an earlier ruling." *Am. Canoe Ass'n*, 326 F.3d at 515. Instead, courts retain their "inherent power to correct earlier error, if it becomes apparent." *Cap. Invs. Co.*, 584 F.2d at 654.

The law-of-the-circuit doctrine is something else entirely—both in terms of when it applies and how strongly. Barring an exception, the law of the case ensures that "the same issue presented a second time in

8

the *same case* . . . lead[s] to the same result," whereas the law of the circuit ensures that "the same issue presented in a *later case* . . . lead[s] to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis altered). Properly understood then, the law-of-the-case doctrine applies when the *same panel* decides a subsequent appeal in the *same case*. And the law-of-the-circuit doctrine applies when a *different panel* decides an appeal in a *different case*.[4]

That explains why the Court often states the law-of-the-circuit doctrine's stricter standard in terms of one panel's ability to bind a *different* panel in a subsequent case: under the law of the circuit, a "decision of a panel of this court becomes the law of the circuit and is binding on *other* panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme

---

[4] The caselaw is less clear over whether the law-of-the-circuit doctrine might also apply when a *different panel* decides a subsequent appeal in the *same case*. The better approach in that situation is to apply *only* the law-of-the-case doctrine, and the Court should do so here even if a different panel hears this appeal. "As compared to a panel hearing an unrelated case, successive panels acting in the same case are working with the advocacy and the facts that inspired the first ruling." 18B Edward H. Cooper, FED. PRAC. & PROC. JURIS. § 4478.2 (2d ed.). Thus, if a party makes a proper showing of clear error in the earlier decision, "justice between the parties weighs strongly in favor of reconsideration." *Id.* If the Court disagrees and concludes that the law-of-the-circuit doctrine also applies, then the full Court should take this case en banc to reconsider and overrule the prior panel decision.

Court." Edwards's Br. 18 (emphasis added) (quoting *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020)). "In other words, 'one panel cannot overrule a decision issued by *another* panel.'" *Id.* (emphasis added) (quoting *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc)).

It also explains why, in cases where "this Court has applied a holding from an earlier appeal in the [same] case, it [has] cited only the law-of-the-case doctrine, and not the law-of-the-circuit doctrine." Edwards's Br. 20 n.5 (citing as examples, *L.J. v. Wilbon*, 633 F.3d 297, 308 (4th Cir. 2011), and *U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1995)).[5]

And it explains why the law of the case is "more flexible" and more forgiving, allowing the Court to reconsider earlier rulings in the same case if a party can "show reasons why the law of the case should not be binding." 18B Edward H. Cooper, Fed. Prac. & Proc. Juris. § 4478.2 (2d ed.). "Reconsideration in the very case that conceived the nascent precedent allows full development of the adversary process through to

---

[5] In contrast, Edwards cites a single case where a panel of this Court, in a footnote, claimed to apply the law-of-the-circuit doctrine to an earlier panel decision in the same case. Edwards's Br. 19–20 (quoting *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 n.5 (4th Cir. 2017)). In the same footnote, though, the panel held that its earlier decision was "the law of the case," and none of the exceptions applied. *Id.* That holding resolved the issue. So the panel's gratuitous reference to the law of the circuit was dicta.

final judgment." *Id.* "If further consideration of the very same dispute demonstrates the error of the initial disposition—and clear demonstration will be demanded—justice between the parties weighs strongly in favor of reconsideration." *Id.*

This Court's law-of-the-case precedent reflects the "traditional" and "more flexible" approach. *Id.* Indeed, this Court has described the law of the case as "a malleable doctrine meant to balance the interests of correctness and finality." *Am. Canoe Ass'n*, 326 F.3d at 515. "[U]nfortunately, . . . the fear of inter-panel conflict is driving some courts to displace law-of-the-case theory by an increasingly rigid 'law-of-the-circuit' theory." 18B FED. PRAC. & PROC. JURIS. § 4478.2. These courts' decisions "reflect an apparently growing desire to bind a successive panel by ties stronger than traditional law-of-the-case doctrine." *Id.* As a result, some courts have traded the law-of-the-case doctrine's flexible standard for a "strait jacket," "insisting that a first panel decision becomes law of the circuit, binding on all panels until abrogated by the court en banc." 16 Edward H. Cooper, FED. PRAC. & PROC. JURIS. § 3938 (3d ed.).

Edwards urges the Court to follow this out-of-circuit trend—applying the law-of-the-circuit doctrine "even when one of the exceptions to the law of the case would allow a panel to revisit [its] earlier decision." Edwards's Br. 20 (cleaned up). But the Court should reject that invitation for three reasons. First, it would render the law-of-the-

case doctrine all but obsolete—applicable only "when a panel of this Court issues an *unpublished* opinion" in the prior appeal. Edwards's Br. 21 n.6. Second, it would contradict this Court's prior practice, which even Edwards appears to concede. *Id.* at 20 n.5. And third, it would waste judicial resources—forcing the full Court to sit en banc "to correct [a panel's] earlier error," once "it becomes apparent," whereas under the current approach the panel has the "inherent power" to correct its own mistakes. *Cap. Invs. Co.*, 584 F.2d at 654.[6]

All of that can be avoided by adhering to the Court's current practice: the law-of-the-case doctrine applies to all prior panel decisions in subsequent appeals in the same case, and the law-of-the-circuit doctrine applies to all published decisions in subsequent appeals in different cases. This is a subsequent appeal in the same case as the prior panel decision. So only the law-of-the-case doctrine applies and, as explained below, that doctrine does not require this panel to repeat earlier mistakes.

---

[6] The law-of-the-circuit doctrine might apply in a subsequent appeal in the same case when "a later circuit decision *in another case* has relied on a decision that otherwise would be merely the law of the case." 18B FED. PRAC. & PROC. JURIS. § 4478.2 (emphasis added). But where, as here, the "earlier panel opinion has not engendered reliance as the law of the circuit in any other case, the panel hearing a later appeal should feel free to apply law-of-the-case rules." *Id.*

**B.  The law-of-the-case doctrine is discretionary, and fealty to it does not justify flaunting Congress's intent and binding Supreme Court precedent.**

As the Director argued in his opening brief, the law-of-the-case doctrine is "discretionary rather than mandatory." Opening Br. 13 (quoting *Owens*, 967 F.3d at 425). It "does not and cannot limit the power of a court to reconsider an earlier ruling." *Id.* (quoting *Am. Canoe Ass'n*, 326 F.3d at 515). "And for that reason, it 'admits of a variety of exceptions.'" *Id.* (quoting *Owens*, 967 F.3d at 425).

Edwards does not cite any caselaw for the contrary position—that the law-of-the-case doctrine is mandatory rather than discretionary, or that it somehow limits the Court's power to reconsider its earlier ruling. Still, she argues that the panel's prior holding is "[b]inding [l]aw of the [c]ase," and that the Court is required to follow it "unless one of three narrow exceptions applies." Edwards's Br. 21–22. But that argument ignores the doctrine's discretionary nature and this Court's decision in *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988), which Edwards never cites or rebuts. And by handcuffing the Court to its clearly erroneous reading of *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 785 (1980), Edwards's rigid version of the law-of-the-case doctrine would deny the Court the opportunity to fulfill its "ultimate responsibility," which is to "reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. Correct judgment here requires this Court to reverse on the merits and to rule in the Director's favor.

13

### 1. In *Sejman*, this Court correctly held that the law-of-the-case doctrine cannot trump Congress's intent.

In his opening brief, the Director relied heavily on this Court's holding in *Sejman* that "a 'judicially created procedural doctrine' like the law of the case 'cannot defeat the intent of Congress.'" Opening Br. 19 (quoting *Sejman*, 845 F.2d at 69). *Sejman* demonstrates that, in cases involving the proper interpretation of federal statutes, "even in cases where the law-of-the-case doctrine would otherwise control, 'it would nevertheless be error' for a court to refuse to follow Congress's intent in interpreting and applying a federal statute." *Id.* (quoting *Sejman*, 845 F.2d at 69).

Multiple times in her response brief, Edwards acknowledges that this case is about congressional intent. Edwards's Br. 15–16, 31–33. But she never offers any response to the Director's reliance on *Sejman* for the proposition that the judge-made law-of-the-case doctrine cannot trump Congress's intent. Indeed, she doesn't even mention *Sejman*.

Instead, Edwards argues that "[t]here are only three narrow exceptions to the law-of-the-case doctrine, and none of them applies here." Edwards's Br. 2. By Edwards's telling, apparently none of them requires the Court to ensure that its prior decision does not defeat Congress's intent either. *Id.* at 14, 22–26. But that argument ignores *Sejman*.

In *Sejman*, this Court cited the same three exceptions to the law-of-the-case doctrine that Edwards cites in her brief. 845 F.2d at 69. Importantly, though, the Court did not rely on *any* of those exceptions to support the Court's conclusion that "it would nevertheless be error" to apply the law-of-the-case doctrine "to refuse to apply" the relevant federal statute "in the present litigation." *Id.* That was because "[a] judicially created procedural doctrine cannot defeat the intent of Congress." *Id.* And that was especially true in *Sejman* because the relevant statute was preemptive, and a "state court confronted with a dispute governed by a preemptive federal statute would have no authority to adjudicate the matter other than in accordance with the statute." *Id.* at 69–70.

So too here. The Medicaid Act does not create the private right of action that Edwards asserts in her complaint, and the district court had "no authority to adjudicate the matter other than in accordance with the statute." *Id.* at 70. Thus, even without invoking one of the three exceptions to the law-of-the-case doctrine that this Court has identified, the Court can—and should—correct its mistake in the prior panel decision to avoid allowing a judge-made doctrine to defeat congressional intent.

In the alternative, the prior panel decision qualifies as "clearly erroneous" because it is impossible to reconcile it with the Supreme Court's binding holding in *O'Bannon*—not to mention the Supreme

15

Court's decisions in *Gonzaga* and *Armstrong*. *Infra* at 18–23; Opening
Br. 22–30. As the Fifth Circuit recently observed en banc in reversing
its own precedent on the issue presented here, this Court's treatment of
*O'Bannon* in the prior panel opinion was "demonstrably incorrect."
*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health
Servs., Inc. v. Kauffman*, 981 F.3d 347, 365–66 (5th Cir. 2020) (en
banc).[7]

That demonstrably incorrect ruling creates a manifest injustice[8]
here for at least three reasons: (1) it allows private litigants to bring
lawsuits that Congress never authorized to enforce so-called private
rights that Congress never created, (2) it forces states to spend taxpayer
dollars to defend against these unauthorized lawsuits and to do things
that Congress never intended to force them to do, and (3) it allows

---

[7] Edwards argues that "another court weighing in on the other side of
an inter-circuit disagreement does not establish clear error." Edwards's
Br. 25–26. But the two cases she cites for that assertion both involve
the plain-error standard—not the law-of-the-case doctrine. *Id.* at 26.
And the Tenth Circuit's decision in *Bridger Coal Company v. Director,
Office of Workers' Compensation Programs*, demonstrates that the
"development of a circuit split on an issue central" to an earlier decision
"*is* a legitimate reason . . . to reconsider prior rulings." 669 F.3d 1183,
1192 (10th Cir. 2012) (emphasis added).

[8] Edwards says she is "not aware of any decision in which this Court"
has applied the manifest-injustice exception. Edwards's Br. 26 n.8. But
the Court has indeed done so. *United States v. Am. Ins. Co.*, 852 F.2d
566 (4th Cir. 1988) (per curiam) (unpublished) (holding that the earlier
ruling "was clearly erroneous and would work a manifest injustice if not
corrected").

providers like Planned Parenthood to use individual plaintiffs to shoehorn their way into federal court while eschewing their available remedies in state court—including the right to an administrative appeal—that Congress intended them to use. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 216 F.3d 764, 789 (9th Cir. 2000) (applying the manifest-injustice exception because applying the prior panel decision's "erroneous holding" would have meant "the defendants would lose their opportunity to present [a] dispositive defense," one that would have "fully vindicate[d] their right to be free from a trial and an adverse damage award").[9]

In contrast, Edwards will not be prejudiced if this Court revisits and corrects its earlier decision. As the Second Circuit has explained, "the decision whether or not to apply law-of-the-case is . . . informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). "In this context 'prejudice' does not mean harm resulting from the failure to adhere to the prior decision; rather, it refers to a lack of sufficiency of notice or a

---

[9] The Ninth Circuit partially overruled *Tahoe-Sierra*—along with its decision in *Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997)—when the court held in *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012), that most exceptions to the law-of-the-case doctrine are superseded by the "law of the circuit" rule. Notwithstanding that decision, *Tahoe-Sierra* and *Jeffries* reflect the better approach to both doctrines. *See* 18B FED. PRAC. & PROC. JURIS. § 4478.2 (discussing *Jeffries* and *Gonzalez*).

17

lack of sufficient opportunity to prepare armed with the knowledge that the prior ruling is not deemed controlling." *Id.* (cleaned up). So in cases like this one—where the party has "ample notice and an opportunity to attempt to persuade the court that it should not alter its prior ruling"— the Court is "well within [its] discretion to decline to deem itself bound by a ruling that it [has] come to view as wrong." *Id.* at 758–59.[10]

## 2. *O'Bannon* held that Congress did not create the private right Edwards asserts here—and without a private right, she has no private right of action.

In *O'Bannon*, the Supreme Court held that, "while a patient has a right to continued benefits to pay for care in the qualified institution of his choice, he has *no enforceable expectation* of continued benefits to pay for care in an institution that has been determined to be unqualified." 447 U.S. at 786 (emphasis added).[11] Therefore, the lower court had erred in holding that the any-qualified-provider provision "create[s] a *substantive* right to remain [with the provider] of one's choice absent

---

[10] Likewise, this Court can direct the district court to enter summary judgment for the Director on Edwards's first claim because, having fully briefed the relevant issues, Edwards cannot claim any prejudice. *See A.M. v. Holmes*, 830 F.3d 1123, 1137 (10th Cir. 2016) (affirming grant of summary judgment for non-movant where movant "was aware" district court "planned to rule" on the issue, and the parties had fully briefed it).

[11] Edwards disparages the Director's reliance on this "single sentence" in *O'Bannon*. Edwards's Br. 35. But courts often state their holdings in a "single sentence." That does not make them any less binding. And the Court's full opinion confirms that the Director's reading of *O'Bannon*— like the Fifth Circuit's reading in *Kauffman*—is the correct one.

18

specific cause for transfer." *Id.* (emphasis added). That provision "gives recipients the right to choose among a range of *qualified* providers, without government interference." *Id.* at 785. "But it clearly does not confer a right on a recipient to [select] an unqualified [provider] and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care [from a provider] that has been decertified." *Id.*

Edwards says that she "*can* sue under Section 1983 to enforce the Medicaid Act's free-choice-of-provider provision." Edwards's Br. 35–38 (emphasis added). Clearly, she believes the provision gives her a private right "to continue to receive benefits for care" from a provider, Planned Parenthood, "that has been decertified." *O'Bannon*, 447 U.S. at 785. But just as "clearly," *O'Bannon* holds that the provision "does not confer [that] right on a [Medicaid] recipient." *Id.* And without that right, Edwards cannot have a private right of action to enforce it. *See Kauffman*, 981 F.3d at 357 ("[b]ecause the Individual Plaintiffs do not have a right to continued benefits to pay for care from the Providers, they are not likely to prevail on the merits of their § 1983 claims").

In a single paragraph in the prior panel opinion, this Court distinguished *O'Bannon* on two grounds. J.A. 244–45. First, the panel mistakenly thought that *O'Bannon* only "spoke to the narrow question whether residents of a nursing home had a right to a pre-termination hearing before the state could close a home *that all parties agreed* was

professionally 'unqualified' to render patient care." J.A. 244 (emphasis added). Second, the panel mistakenly thought that the claim in *O'Bannon* was "very different" because the "patients there *did not bring a substantive claim* seeking to vindicate their rights under the free-choice-of-provider provision, but rather sued for violation of their procedural due process rights." J.A. 244–45 (emphasis added).

Both of those bases turned out to be "demonstrably incorrect," as the Fifth Circuit en banc pointed out in *Kauffman*, 981 F.3d at 365–66, and as the Director explained in his opening brief, Opening Br. 24–26. If this Court agrees with that assessment—and it should—then nothing should prevent the Court from correcting its mistake. If a court's earlier ruling in the same case "is avowedly tentative *or the issues especially important*, it may be said that law-of-the-case principles do not apply." *Am. Canoe Ass'n*, 326 F.3d at 516 (emphasis added) (quoting 18B Wright, Miller & Cooper, FED. PRAC. & PROC. JURIS. § 4478.5 (2d ed.). This Court's responsibility to follow binding Supreme Court precedent— especially on issues of statutory interpretation and congressional intent—makes the issues involved in this appeal "especially important" for all the reasons already stated. And the fact that the prior panel decision was issued in a preliminary-injunction appeal—which is

necessarily tentative—only bolsters the conclusion that this Court can and should correct its earlier mistake. Opening Br. 14–18.[12]

### 3. Edwards misreads *O'Bannon* and mostly just repeats the prior panel decision.

Like the prior panel decision, Edwards argues that *O'Bannon* is distinguishable because *O'Bannon* only "addressed whether Medicaid recipients had a procedural-due-process right to a hearing before the State closed a nursing home." Edwards's Br. 35. As the Fifth Circuit explained in *Kauffman*, though, it's impossible to have that procedural due process right without "an underlying *substantive* right that would permit [recipients] to challenge a State's determination that a provider is not qualified." *Kauffman*, 981 F.3d at 366. And *O'Bannon* "made [that] plain" before holding that "there is no such substantive right" under the any-qualified-provider provision. *Id.*

Edwards also tries to distinguish *O'Bannon* because it "did not address private rights of action under Section 1983." Edwards's Br. 34.

─────────────

[12] Relatedly, Edwards argues that the Director "asks the Court to recognize a fourth exception for preliminary-injunction appeals." Edwards's Br. 23, 27–31. But the Court does not need to create a new stand-alone exception. The "absence of a 'final adjudication' in the prior appeal counsels against applying the law-of-the-case doctrine here." Opening Br. 18 (quoting *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 198–99 (1950)). "And that is especially true" when that factor is considered together with the "two additional factors" described above—namely that this case implicates issues of congressional intent and binding Supreme Court precedent. *Id.*

But that argument fails for the same reason as the first. A private right of action under Section 1983 *also* depends on an underlying substantive right. *See Kauffman*, 981 F.3d at 354 ("If they do not have such a right, then our inquiry is at an end because without a right that can be vindicated by a § 1983 action, the Individual Plaintiffs cannot bring this suit."). And *O'Bannon* forecloses any argument that any such right exists.

Thus, it's irrelevant that *O'Bannon* "does not even mention Section 1983." Edwards's Br. 35. What matters is the Court's holding that individual Medicaid recipients like Edwards have "*no enforceable expectation* of continued benefits to pay for care in an institution," like Planned Parenthood, "that has been determined to be unqualified." *O'Bannon*, 447 U.S. at 786 (emphasis added).[13]

Similarly, Edwards mostly just repeats the prior panel decision's reasons for rejecting the Director's argument that the Supreme Court's decisions in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), foreclose Edwards's claim to a private right of action under the any-qualified-provider provision and Section 1983. *Compare* Edwards's Br.

---

[13] Edwards wrongly claims "everyone agrees that [it] *is* a qualified and willing provider." Edwards's Br. 37. But the State has determined it is *not* qualified. J.A. 54, J.A. 56. And Edwards does not have "a substantive right to remain" with her chosen provider when that provider "has been determined to be unqualified." *O'Bannon*, 447 U.S. at 786.

9–11 *with* Edwards's Br. 31–34. And the Director sufficiently addressed Edwards's arguments on these points in the Director's opening brief. Opening Br. 27–30. The panel's reasoning "cannot be reconciled with" the Supreme Court's decisions in *Gonzaga* and *Armstrong*. *Id.* at 30. So instead of trying, "this Court should exercise its 'inherent power to correct' its mistake[s]" and reverse the decision below. *Id.* (quoting *Cap. Invs. Co.*, 584 F.2d at 654).

## CONCLUSION

When this case last came before this Court, the panel held that Congress unambiguously created a private right enforceable under § 1983 in the Medicaid Act's any-qualified-provider provision. J.A. 218, J.A. 245–46. That holding was "demonstrably incorrect," as the en banc Fifth Circuit recently held. *Kauffman*, 981 F.3d at 365–66. Individual recipients have "no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified." *O'Bannon*, 447 U.S. at 786. But this Court has the "inherent power" to fix the panel's mistake. *Cap. Invs. Co.*, 584 F.2d at 654. Even more than that, the Court's "ultimate responsibility . . . is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. And neither the law of the circuit nor the law of the case prevents the Court from doing that here. (This assumes, of course, that this case is not moot; if the case *is* moot, both the district court's decision and the prior panel opinion should be vacated and Edwards's claims dismissed in full.)

Accordingly, the Court should (1) reverse the district court's opinion and order granting Plaintiffs' summary judgment on the first count in their complaint, (2) vacate the court's order entering declaratory and permanent injunctive relief, and (3) remand for entry of an order entering summary judgment for the Director on Edwards's first claim. In the alternative, the full Court should take the case en banc to reconsider and overrule the prior panel decision, which now conflicts with two Circuits.

Dated: July 2, 2021             By: */s/ John J. Bursch*

KELLY M. JOLLEY                 JOHN J. BURSCH
ARIAIL B. KIRK                  BURSCH LAW, PLLC
JOLLEY LAW GROUP, LLC           9339 Cherry Valley Ave SE #78
P.O. Box 50529                  Caledonia, MI 49316
Columbia, SC 29250              (616) 450-4235
(803) 809-6500                  jbursch@burschlaw.com
kjolley@jolleylawgroup.com
akirk@jolleylawgroup.com

*Attorneys for Defendant-Appellant*

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,943 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Office 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook.

Dated: July 2, 2021

*/s/ John J. Bursch*
John J. Bursch
Attorney for Defendant-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ John J. Bursch*
John J. Bursch
Attorney for Defendant-Appellant
