No. 21-1043

# United States Court of Appeals
# for the Fourth Circuit

PLANNED PARENTHOOD SOUTH ATLANTIC, et al.,
*Plaintiffs-Appellees,*

— v. —

ROBERT M. KERR,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of South Carolina
Case No. 3:18-cv-02078 (Hon. Mary Geiger Lewis)

## SUPPLEMENTAL RESPONSE BRIEF OF APPELLEES

Nicole A. Saharsky
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Jennifer Sandman
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4909
jennifer.sandman@ppfa.org

M. Malissa Burnette
Kathleen McDaniel
BURNETTE, SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
Columbia, SC 29201
(803) 904-7913

*Counsel for Appellees Planned Parenthood South Atlantic and Julie Edwards*

## TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................1

BACKGROUND ..................................................................................3

    A.    Factual Background..................................................3

    B.    Procedural History ...................................................4

        1.    Preliminary Injunction Decision and Appeal ...................4

        2.    Preliminary Injunction Certiorari Denial ......................6

        3.    Permanent Injunction Decision and Appeal....................7

        4.    Permanent Injunction Certiorari Petition and Remand Following *Talevski*................................8

ARGUMENT .....................................................................................10

I.    *Talevski* Provides No Basis To Revisit This Court's Statutory-Interpretation Holding ........................................10

    A.    The Spending Clause Holding In *Talevski* Does Not Aid South Carolina .........................................10

    B.    The Statutory-Interpretation Holding In *Talevski* Does Not Aid South Carolina .................................13

II.    This Court's Prior Holding That The Free-Choice-Of-Provider Provision Is Privately Enforceable Is Correct...................19

CONCLUSION ..................................................................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Planned Parenthood S. Atl.*,
141 S. Ct. 550 (2020) ...................................................................7

*Blessing v. Freestone*,
520 U.S. 329 (1997) ....................................... 2, 5, 10, 14, 16, 17

*Does v. Gillespie*,
867 F.3d 1034 (8th Cir. 2017) ...........................................20, 21

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002) ....................................... 2, 5, 6, 13-18, 23

*Gonzalez v. Justs. of Mun. Ct. of Bos.*,
420 F.3d 5 (1st Cir. 2005)...........................................................18

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023) ......................................... 1, 9, 10-17, 19-22

*Health and Hosp. Corp. of Marion Cnty. v. Talevski*,
6 F.4th 713 (7th Cir. 2021).................................................11, 13

*Kerr v. Planned Parenthood S. Atl.*,
143 S. Ct. 2633 (2023) ................................................................9

*Maine v. Thiboutot*,
448 U.S. 1 (1980) ......................................................................14

*O'Bannon v. Town Ct. Nursing Ctr.*,
447 U.S. 773 (1980) .....................................................................7

*Planned Parenthood S. Atl. v. Baker*,
941 F.3d 687 (4th Cir. 2019) ..................................... 1, 6, 15-23

*Planned Parenthood S. Atl. v. Baker*,
487 F. Supp. 3d 443 (D.S.C. 2020)............................................7

*Planned Parenthood S. Atl. v. Baker*,
326 F. Supp. 3d 39 (D.S.C. 2018).............................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Planned Parenthood S. Atl. v. Kerr*,
  27 F.4th 945 (4th Cir. 2022)....................................3, 4, 7, 8, 15-19, 21-23

*Stokes v. Stirling*,
  64 F.4th 131 (4th Cir. 2023)....................................................12

**Statutes**

42 U.S.C. § 1320a-2 ...................................................................20

42 U.S.C. § 1396a(a)(23)(A) ............................................1, 3, 22

42 U.S.C. § 1396d(a) ..................................................................3

42 U.S.C. § 1396r(c)(1)(A)(ii)....................................................11

42 U.S.C. § 1396r(c)(2)(A)-(B) ...................................................11

42 U.S.C. § 1983 ...........................................................1, 4, 11

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is not necessary. The Court has twice decided the legal issue in this case, which is whether the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers a right enforceable under 42 U.S.C. § 1983. The Court issued its original holding and then reaffirmed that holding with the benefit of two rounds of full briefing and oral argument. The only question now before the Court is whether the Supreme Court's decision in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), requires the Court to revisit its prior decisions. That narrow question is fully addressed in the parties' supplemental briefs. Appellees have moved to submit the case on the briefs, and South Carolina has indicated that it does not oppose submission of the case on the briefs.

## INTRODUCTION

The issue in this case is whether the Medicaid Act's free-choice-of-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers a right privately enforceable under 42 U.S.C. § 1983. This Court has already answered that question "yes" – twice.

In 2019, on appeal of a preliminary injunction, this Court thoroughly addressed that statutory-interpretation question. It applied the governing Supreme Court precedents and held that "Congress unambiguously intended to create a private right of action in the free-choice-of-provider provision." *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 701 (4th Cir. 2019). Then in 2022, on appeal of the permanent injunction, South Carolina asked this Court to revisit that question. The Court held that its prior holding was binding circuit precedent and law of the case, and it also explained why its prior holding is correct. Now, South Carolina once again asks the Court to revisit its legal holding, this time because of the Supreme Court's decision in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023).

Nothing in *Talevski* requires the Court to revisit its prior holding. The primary legal issue in *Talevski* was whether a federal statute Congress enacted using its Spending Clause power can give rise to rights enforceable under Section 1983. The nursing facility in that case argued that a Spending Clause statute categorically cannot give rise to a private right of action,

and the Supreme Court rejected that view. The Court then held that the Medicaid provisions at issue in that case created private rights enforceable under Section 1983. In this case, South Carolina never argued to this Court that a Spending Clause statute cannot give rise to a private right of action. So the primary issue in *Talevski* simply is not presented here. And even if South Carolina had preserved the issue, *Talevski* would not support South Carolina's position, because the Supreme Court *rejected* the argument that a Spending Clause statute cannot give rise to a private right of action.

In holding that the Medicaid provisions at issue created private rights of action, the *Talevski* Court simply applied settled law. It did not overrule any of its prior precedents or otherwise change the law in a way that requires this Court to revisit its two prior decisions.

South Carolina argues that this Court erred in its prior decisions in this case because it relied on *Blessing v. Freestone*, 520 U.S. 329 (1997), which South Carolina contends is inconsistent with *Gonzaga University v. Doe*, 536 U.S. 273 (2002). But this Court already considered both *Blessing* and *Gonzaga*, and it recognized the Supreme Court refined the *Blessing* test in *Gonzaga*. *Talevski* did not change that: The Supreme Court did not address the interaction of *Blessing* and *Gonzaga* or overrule *Blessing*. Instead, the Court relied on *Gonzaga*, *Blessing*, and several other prior precedents. So South Carolina's arguments about how *Blessing* interacts with *Gonzaga* provide no reason for this Court to revisit its prior holding.

Finally, South Carolina renews some of its prior arguments about how it believes this Court's prior holding is wrong. None of those arguments depends on *Talevski*. This Court's holding was correct originally, and it remains correct today. The Court thoroughly analyzed the statute's text, giving due attention to the Supreme Court's guidance, and all three judges on the panel agreed that the statute unambiguously confers a private right of action. This Court should affirm the judgment of the district court.

## BACKGROUND

### A.    Factual Background

Medicaid is the national health insurance program for persons of limited financial means. *Planned Parenthood S. Atl. v. Kerr*, 27 F.4th 945, 948-49 (4th Cir. 2022). It provides federal funding for medical care for children, needy families, the elderly, the blind, the disabled, and pregnant women. *See* 42 U.S.C. § 1396d(a). In order for a state to participate in Medicaid, it must comply with various federal requirements, including the free-choice-of-provider provision. The provision states that a state's Medicaid plan "must" provide that "any individual eligible for medical assistance . . . may obtain such assistance" from any provider who is "qualified to perform the service or services required" and "who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

Appellee Planned Parenthood South Atlantic (PPSAT) and its predecessor have provided healthcare to low-income residents of South Carolina

for four decades. *Kerr*, 27 F.4th at 956. PPSAT's health centers provide essential medical care, including physical exams; cancer screenings; contraception; pregnancy testing and counseling; and screening for conditions such as diabetes, depression, anemia, cholesterol, thyroid disorders, and high blood pressure. *Id.* at 949; JA029 ¶ 5, JA221.[1] Appellee Julie Edwards is a Medicaid patient who has received care at PPSAT and intends to continue receiving care there. *Kerr*, 27 F.4th at 949-50.

In 2018, South Carolina's Department of Health and Human Services terminated PPSAT's participation in the state Medicaid program. *Kerr*, 27 F.4th at 950. If that termination is upheld, Ms. Edwards will no longer be able to obtain services at PPSAT, and many other Medicaid patients will not be able to receive critical medical care. *See id.*

## B.    Procedural History

### 1.    Preliminary Injunction Decision and Appeal

Appellees sued under 42 U.S.C. § 1983, alleging that South Carolina's termination of PPSAT from Medicaid violates the Medicaid Act's free-choice-of-provider provision. *Kerr*, 27 F.4th at 950. They sought preliminary injunctive relief, so that Ms. Edwards and other patients could continue to receive care. *Id.*

---

[1]   The health centers provide abortion services, but Medicaid does not pay for abortion except in the very limited circumstances required by federal law. *Kerr*, 27 F.4th at 949.

4

The district court entered a preliminary injunction. *Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39 (D.S.C. 2018). Applying the Supreme Court's guidance in *Blessing v. Freestone*, 520 U.S. 329 (1997), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the court held that the Medicaid Act's free-choice-of-provider requirement is privately enforceable under Section 1983. *Baker*, 326 F. Supp. 3d at 44-46. The court explained that the statute contains "clear language" that "unambiguously confers a right" on Medicaid patients to "obtain assistance from any qualified and willing provider." *Id.* at 45.

South Carolina appealed. It relied on *both Blessing* and *Gonzaga* as providing the relevant framework to determine whether a statute confers a private right enforceable under Section 1983. Specifically, it explained that courts "analyze the *Blessing* . . . factors in determining whether" a statute creates a federal right, and it cited *Gonzaga* for the proposition that the statute must unambiguously create the right. S.C. Prelim. Inj. Br. 22, 25; *see* S.C. Prelim. Inj. Reply Br. 10 ("appl[ying]" the "*Blessing* factors . . . to this case"). It also argued that a Spending Clause statute like Medicaid *can* give rise to a right enforceable through Section 1983 if the requirements of *Blessing* and *Gonzaga* are satisfied. *See, e.g.*, S.C. Prelim. Inj. Br. 22; S.C. D. Ct. Prelim. Inj. Br. in Opp. 3-10; *see also* S.C. D. Ct. Mot. to Dismiss 15 (acknowledging that if *Gonzaga*'s requirements are met, a private action is "available" under a Spending Clause statute).

5

This Court affirmed the preliminary injunction. *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 693 (4th Cir. 2019). Applying the Supreme Court's precedents, the Court concluded that a Medicaid patient may sue under Section 1983 to enforce the free-choice-of-provider requirement. *Id.* at 696-701. It recognized that a federal statute creates a right enforceable under Section 1983 "only when the underlying statute itself unambiguously 'confers an individual right' on the plaintiff." *Id.* at 695 (quoting *Gonzaga*, 536 U.S. at 284-85). The Court noted that it was "not at liberty to imply private rights of action willy-nilly," especially in legislation enacted under the Spending Clause. *Id.* at 700. But, the Court explained, the statute here is exceptionally clear in creating privately enforceable rights. *Id.* at 696-97. "If th[is] language does not suffice to confer a private right, enforceable under § 1983," the court stated, "it is difficult to see what language would be adequate." *Id.* at 699. All three judges agreed on this point: Although Judge Richardson concurred, he agreed that the statute at issue "unambiguously create[s] a right privately enforceable under § 1983." *Id.* at 707.

### 2. Preliminary Injunction Certiorari Denial

South Carolina filed a petition for a writ of certiorari. Although it previously told this Court that *Blessing* and *Gonzaga* provided the relevant test, it told the Supreme Court that *Blessing* and *Gonzaga* cannot be "reconcile[d]" and that courts should be "untethered" from the *Blessing* factors.

6

S.C. Prelim. Inj. Cert. Pet. 24 n.1, 35.  The Supreme Court denied the peti-
tion.  *Baker v. Planned Parenthood S. Atl.*, 141 S. Ct. 550 (2020).

### 3.    Permanent Injunction Decision and Appeal

The district court granted summary judgment to PPSAT and Ms. Ed-
wards.  *Planned Parenthood S. Atl. v. Baker*, 487 F. Supp. 3d 443 (D.S.C.
2020).  Relying on this Court's preliminary-injunction decision, the district
court again held that the Medicaid Act's free-choice-of-provider provision is
privately enforceable under Section 1983.  *Id.* at 446.  The court then en-
tered a permanent injunction preventing South Carolina from terminating
PPSAT from Medicaid based on the provision of lawful abortion-related ser-
vices.  *Id.* at 449.

South Carolina appealed again.  Relying primarily on *O'Bannon v.
Town Court Nursing Center*, 447 U.S. 773 (1980), South Carolina asked this
Court to reverse its prior holding that the free-choice-of-provider provision
creates a right enforceable under Section 1983.  S.C. Permanent Inj. Br. 22-
27.  South Carolina also repeated its new argument that the *Blessing* factors
became "defunct" after *Gonzaga*.  S.C. Permanent Inj. Br. 29.

This Court affirmed.  *Planned Parenthood S. Atl. v. Kerr*, 27 F.4th 945
(4th Cir. 2022).  It first held that its prior statutory-interpretation holding
was binding circuit precedent and law of the case.  *Id.* at 953.  It explained
that its preliminary-injunction decision had "resolved the precise legal

question" whether the free-choice-of-provider provision creates a right enforceable under Section 1983. *Id.* at 954.

The Court then "reaffirm[ed]" its prior holding on that point. *Kerr*, 27 F.4th at 954; *see id.* at 955-59. It recognized, at the outset, that the Supreme Court has "warned against readily finding statutory rights of action under § 1983." *Id.* at 955. It then applied the Supreme Court's teachings in *Blessing* and *Gonzaga* and again concluded that the free-choice-of-provider provision "unmistakably evinces Congress's intention to confer on Medicaid beneficiaries a right to the free choice of their provider." *Id.* at 956. Judge Richardson concurred in the judgment, again agreeing that the statute "unambiguously create[s] a right privately enforceable under § 1983." *Id.* at 959.

### 4. Permanent Injunction Certiorari Petition and Remand Following *Talevski*

The Supreme Court then granted certiorari in *Health and Hospital Corp. of Marion County v. Talevski* to decide two questions: (i) whether Spending Clause legislation can ever give rise to privately enforceable rights under Section 1983; and (ii) whether two specific provisions in the Federal Nursing Home Reform Act (FNHRA) are privately enforceable under Section 1983. 142 S. Ct. 2673 (2022); *see* Pet. at *i-ii, *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-806, 2021 WL 5702312 (Nov. 23, 2021).

South Carolina then filed another certiorari petition. This time around, South Carolina questioned whether "Spending Clause statutes [can] ever give rise to privately enforceable rights under § 1983," S.C. Permanent Inj. Cert. Pet. i – an issue it had never raised previously in the case. South Carolina thus argued that this case presents the same question as in *Talevski* and asked the Supreme Court to hear the two cases together. S.C. Permanent Inj. Cert. Pet. 23. The Supreme Court did not do so.

The Supreme Court then decided *Talevski*. The Court squarely rejected the argument that Spending Clause statutes cannot give rise to privately enforceable rights under Section 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174-80 (2023). The Court then held that the FNHRA provisions at issue in that case unambiguously conferred individual federal rights enforceable under Section 1983. *Id.* at 180-91. The Court did not hold that *Gonzaga* overruled *Blessing*, address the interaction between those two decisions, or otherwise change the law about determining when a statute confers a private right enforceable under Section 1983.

Following *Talevski*, the Supreme Court granted South Carolina's petition, vacated this Court's judgment, and remanded for further consideration in light of *Talevski*. *Kerr v. Planned Parenthood S. Atl.*, 143 S. Ct. 2633 (2023). This Court directed the parties to file supplemental briefs addressing *Talevski*'s effect on this case, if any. Dkt. 93.

## ARGUMENT

South Carolina argues (Br. 15) that the Supreme Court's decision in *Health & Hospital Corp of Marion County v. Talevski*, 599 U.S. 166 (2023), "undermined" this Court's previous statutory-interpretation holding. In its view (Br. 2), the Supreme Court in *Talevski* "made clear" that courts may not rely on *Blessing v. Freestone*, 520 U.S. 329 (1997), when determining whether a federal statute establishes a right enforceable under Section 1983. *See also* Br. 3-5, 14-16.

That is mistaken. *Talevski* addressed a completely different issue, and the Supreme Court did not purport to change the *Blessing/Gonzaga* test, let alone to overrule *Blessing*. Indeed, *Talevski* applied the same test that this Court has now twice applied in analyzing the free-choice-of-provider provision. *Talevski* then held that the *different* Medicaid Act provisions in that case *did* create privately enforceable rights. Nothing in *Talevski* provides a reason for this Court to reconsider its prior, well-considered, unanimous holding.

## I. *Talevski* Provides No Basis To Revisit This Court's Statutory-Interpretation Holding

### A. The Spending Clause Holding In *Talevski* Does Not Aid South Carolina

The primary legal question before the Supreme Court in *Talevski* was whether legislation that Congress enacted using its Spending Clause power could ever be enforceable under Section 1983. 599 U.S. at 171-72; *see* Pet.

at *i-ii, *Talevski*, 2021 WL 5702312. *Talevski* concerned two provisions in the FNHRA that establish requirements for states and nursing facilities that participate in Medicaid. *See Talevski*, 599 U.S. at 181. Those provisions require nursing facilities to protect and promote residents' right to be free from unnecessary physical and chemical restraints, 42 U.S.C. § 1396r(c)(1)(A)(ii), and impose preconditions that nursing facilities must meet to transfer or discharge a resident, *id.* § 1396r(c)(2)(A)-(B).

The nursing facility argued that a statute Congress enacted using its Spending Clause power can never give rise to a private right of action enforceable under 42 U.S.C. § 1983. *Talevski*, 599 U.S. at 177-78. The Seventh Circuit rejected that view, holding that there is no "unbending rule that Spending Clause legislation *never* supports a private action." *Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 725 (7th Cir. 2021); *see id.* at 723-26. The Supreme Court agreed. *Talevski*, 599 U.S. at 174-80. The Court explained that the "plain language" of Section 1983 lacks any "modifiers" qualifying the laws that can be vindicated through a federal cause of action. *Id.* at 177. The Court "reject[ed]" the petitioner's "invitation" to "rewrite § 1983's plain text" to add a Spending Clause exception. *Id.* at 178.

The Supreme Court's holding that a Spending Clause statute can confer a private right enforceable under Section 1983 does not help South Carolina for two reasons. First, South Carolina did not preserve a Spending

Clause argument like the one that the nursing facility made in *Talevski* –
not in two proceedings in the district court and not in two trips to this Court.
Instead, South Carolina assumed that a Spending Clause provision *can* give
rise to privately enforceable rights, and then argued that this particular
provision does not for various statute-specific reasons.[2]  South Carolina did
not even mention the question whether a Spending Clause statute can give
rise to rights enforceable under Section 1983 until after the Supreme Court
granted certiorari in *Talevski* to resolve that question.  *See* S.C. Cert. Pet.
13.  That was too late to preserve the issue.  *See Stokes v. Stirling*, 64 F.4th
131, 137 (4th Cir. 2023) (noting this Court's "well-established" practice to
"decline[] to address" an argument a party "did not raise properly").

Second, even if South Carolina had preserved the Spending Clause
argument, the Supreme Court *rejected* that argument in *Talevski*.  *See* 599

---

[2]  *See, e.g.*, S.C. Prelim. Inj. Cert. Reply Br. 3 (asking the Supreme Court
to clarify "*when* Spending Clause statutes create private rights" (emphasis
added)); S.C. Prelim. Inj. Br. 22 (arguing that a Spending Clause can give
rise to a right enforceable through Section 1983 if the requirements in *Bless-
ing* and *Gonzaga* are satisfied); S.C. Prelim. Inj. Reply Br. 3-10 (similar);
S.C. D. Ct. Prelim. Inj. Br. in Opp. 6, 8 (asserting that if the "provision at
issue is a Spending Clause provision," whether the provision is privately
enforceable depends on the requirements in *Gonzaga*); S.C. D. Ct. Mot. to
Dismiss 15 (acknowledging that a private action is "available" in certain
circumstances).

U.S. at 174-80. *Talevski*'s Spending Clause holding thus doubly cannot help South Carolina.

### B. The Statutory-Interpretation Holding In *Talevski* Does Not Aid South Carolina

After rejecting the nursing facility's categorical argument about Spending Clause legislation, the Supreme Court in *Talevski* addressed whether the two FNHRA provisions at issue create enforceable rights under Section 1983. The Seventh Circuit had held that they do. 6 F.4th at 717-21. The Seventh Circuit "appl[ied] *Blessing*'s three factors in light of" *Gonzaga*'s instruction that only an "unambiguously conferred right . . . can support a section 1983 action." *Id.* at 718. And it concluded that the FNHRA provisions "unambiguously confer individually enforceable rights on nursing-home residents" and that Congress did not foreclose Section 1983 claims through a "comprehensive enforcement scheme, incompatible with individual enforcement." *Id.* at 720.

The Supreme Court affirmed. It agreed with the Seventh Circuit that the FNHRA provisions at issue "*unambiguously* confer individual federal rights." 599 U.S. at 180 (citing *Gonzaga*, 536 U.S. at 280); *see id.* at 181-86. The Court explained that the FNHRA provisions "use clear 'rights-creating language,' speak 'in terms of the persons benefited,' and have an 'unmistakable focus on the benefited class.'" *Id.* at 186 (quoting *Gonzaga*, 536 U.S. at 284, 287, 290). The Court also determined that Congress did not implicitly

13

preclude a Section 1983 remedy by creating a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*; *see id.* at 187-91.

The Supreme Court did not purport to change the governing test for determining when a statute confers a private right of action. It stated that "*Gonzaga* sets forth our established method for ascertaining unambiguous conferral" and advised courts to "employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 280). Although the Court recognized that *Gonzaga* provided its most recent guidance on the issue, it relied on earlier cases, including *Blessing*. *Id.* at 189. It explained that it has been "craft[ing] a test for determining whether a particular federal law actually secures rights for § 1983 purposes" since its decision in *Maine v. Thiboutot*, 448 U.S. 1 (1980). 599 U.S. at 175. And the main question the *Talevski* Court asked – whether the provision at issue is "phrased in terms of the persons benefited" and contains "rights-creating," "individual-centric language" that "unmistakabl[y] focus[es] on the benefited class," *id.* at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287) – is the same question that the *Blessing* Court asked. *See Blessing*, 520 U.S. at 340 ("Congress must have intended that the provision in question benefit the plaintiff"); *id.* at 343 (asking whether statute created "an *individual* entitlement to services").

14

Notably, the parties in *Talevski* did not ask the Supreme Court to change the governing test.  Instead, they applied the factors set forth in *Blessing* and *Gonzaga* in arguing whether the FNHRA provisions create privately enforceable rights.  *See* Pet. Br. at 42-47, *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), 2022 WL 2898343; Resp. Br. at 13-16, *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), 2022 WL 798919.  Thus, nothing in *Talevski* changed the test for determining whether a federal law secures rights for Section 1983 purposes, much less suggested that *Gonzaga* overruled *Blessing*.

This Court has twice in this case applied the same test that the Supreme Court applied in *Talevski*.  It even cited the same passages from *Gonzaga* requiring unmistakable clarity to find privately enforceable rights.  This Court held that "Congress unambiguously intended to create a private right . . . in the free-choice-of-provider provision." *Baker*, 941 F.3d at 700 (citing *Gonzaga*, 536 U.S. at 283); *see Kerr*, 27 F.4th at 955-57.  This Court explained that the free-choice-of-provider provision contains "the kind of 'rights-creating' language required to confer a personal right on a discrete class of persons." *Baker*, 941 F.3d at 697; *see Kerr*, 27 F.4th at 956.  The provision is "couched in terms of individual [Medicaid] beneficiaries." *Kerr*, 27 F.4th at 950 (citing *Baker*, 941 F.3d at 697).  And the "unmistakable focus" of the provision is the "intended class of beneficiaries," *i.e.*, Medicaid beneficiaries. *Baker*, 941 F.3d at 697 (quoting *Gonzaga*, 536 U.S. at 284).

15

Indeed, this Court, in the preliminary-injunction decision, "took pains to heed *Gonzaga*'s instruction that there must be an 'unambiguously conferred right to support a cause of action brought under § 1983.'" *Kerr*, 27 F.4th at 957 (quoting *Gonzaga*, 536 U.S. at 283); *see Baker*, 941 F.3d at 695, 697, 700.

South Carolina argues (Br. 3-7, 10, 16) that *Gonzaga* must have overruled *Blessing* because *Talevski* did not expressly discuss the *Blessing* factors. But as explained above, under both *Blessing* and *Gonzaga*, courts start by asking the same question – whether the statute at issue confers individual rights vested in the plaintiff personally. *See Gonzaga*, 536 U.S. at 284; *Blessing*, 520 U.S. at 340-41. That is the same question that the *Talevski* Court answered about the FNHRA provisions, 599 U.S. at 183-86, and that this Court twice answered about the free-choice-of-provider provision, *Baker*, 941 F.3d at 695, 697, 700; *Kerr*, 27 F.4th at 955-57.

This Court also twice considered whether the free-choice-of-provider provision satisfies the other *Blessing* factors – whether the asserted right is "not so 'vague and amorphous' that its enforcement would strain judicial competence" and whether the obligation created by the statute is "mandatory." *Blessing*, 520 U.S. at 340-41; *see Baker*, 941 F.3d at 697-98; *Kerr*, 27 F.4th at 956. Because *Gonzaga* was the most recent Supreme Court decision on the issue, it is not surprising that the *Talevski* Court focused its analysis on *Gonzaga*, just as this Court did. But that does not make

16

*Blessing* irrelevant.   This Court simply harmonized *Blessing* with the Court's more recent teaching in *Gonzaga, Kerr*, 27 F.4th at 957; *see Baker*, 941 F.3d at 709-10 (Richardson, J., concurring), just as the Supreme Court did, *Talevski*, 599 U.S. at 184-85, 189.[3]   South Carolina cannot credibly argue that this Court failed to faithfully apply *Gonzaga* in its two prior decisions; the Court discussed *Gonzaga* extensively and gave it due weight as the most recent decision on the issue.   *See Baker*, 941 F.3d at 695, 700; *Kerr*, 27 F.4th at 955, 957.

South Carolina notes (Br. 10) that *Talevski* described the test for whether a statute confers privately enforceable rights as "demanding." *Talevski*, 599 U.S. at 180 (citing *Gonzaga*, 536 U.S. at 280).   That is nothing new.   This Court said the same thing in its prior opinion:   Relying on

---

[3]   South Carolina repeats (Br. 5-7) arguments it previously made about how *Gonzaga* and *Blessing* are in tension.   But this Court already rejected those arguments.   This Court explained that *Gonzaga*'s statement that *Blessing* could be misread "to suggest that something less than" unambiguous conferral is required, 536 U.S. at 282, was "simply criticiz[ing]" courts that had misinterpreted *Blessing* to allow Section 1983 enforcement under a general-zone-of-interest standard.   *Kerr*, 27 F.4th at 957.   And *Gonzaga*'s instruction that courts should not "apply a multifactor balancing test," S.C. Permanent Inj. Br. 6 (quoting 536 U.S. at 286), does not relate to *Blessing*, which does not provide a balancing test – all of its factors "must" be satisfied to find privately enforceable rights, *Baker*, 941 F.3d at 696; *see Blessing*, 520 U.S. at 340-41 (similar).   Indeed, the *Gonzaga* Court repeatedly cited *Blessing* with approval and then concentrated its analysis on the factors most relevant in that case.   536 U.S. at 287-89.

*Gonzaga*, it stated that courts may not "imply private rights of action willy-nilly"; rather, Congress's intent to create such a right "must be 'unmistakably clear.'" *Baker*, 941 F.3d at 700 (quoting *Gonzaga*, 536 U.S. at 286); *see Kerr*, 27 F.4th at 957. All three judges on this Court then concluded that the statute here is exceptionally clear: "If th[is] language does not suffice to confer a private right, enforceable under § 1983," "it is difficult to see what language would be adequate." *Baker*, 941 F.3d at 699; *see id.* at 707 (Richardson, J., concurring). There is no daylight between the Supreme Court's approach in *Talevski* and this Court's approach in its two prior decisions in this case.

### C. The Mere Fact of A GVR Does Not Aid South Carolina

South Carolina suggests (Br. 3) that *Talevski* must have changed the law because the Supreme Court granted its certiorari petition, vacated this Court's prior judgment, and remanded the case to this Court. South Carolina is wrong. Granting the petition, vacating, and remanding (GVR) is "merely a device that allows a lower court that had rendered its decision without the benefit of an intervening clarification to have an opportunity to reconsider that decision." *Gonzalez v. Justs. of Mun. Ct. of Bos.*, 420 F.3d 5, 7 (1st Cir. 2005). So all the GVR means is that the Supreme Court would like this Court to assess in the first instance whether *Talevski* affects this case. The Supreme Court simply never opined on the merits of this case.

## II.  This Court's Prior Holding That The Free-Choice-Of-Provider Provision Is Privately Enforceable Is Correct

South Carolina spends a significant portion of its brief (Br. 8-9, 12-13) repeating arguments about the free-choice-of-provider provision that this Court already has rejected.  The Court has thoroughly considered the statutory-interpretation issue twice.  In the preliminary-injunction opinion, the Court resolved that issue "as a matter of law."  *Kerr*, 27 F.4th at 954; *see Baker*, 941 F.3d at 696-701.  On appeal from summary judgment, the Court held that its preliminary-injunction holding was "binding" circuit precedent, and then it went a step further, "tak[ing] th[e] opportunity to reaffirm" its holding that the free-choice-of-provider provision is enforceable under Section 1983.  *Kerr*, 27 F.4th at 953-954; *see id.* at 955-59.

In order to overcome those holdings, South Carolina would have to show that *Talevski* is a "superseding contrary decision."  *Kerr*, 27 F.4th at 953 (quoting *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020)).  South Carolina cannot simply march into this Court and rehash old arguments about how the Court's holdings were wrong.  South Carolina does not even try to use *Talevski* to support its old arguments.  *See* Br. 8-9, 12-13.  And if anything, *Talevski*'s holding that FNHRA provisions create federal rights enforceable under Section 1983, 599 U.S. at 180-91, strengthens this Court's prior holdings.  South Carolina's arguments are wrong now just as they were wrong when this Court rejected them in 2019 and 2022.

19

South Carolina argues (Br. 8) that this Court should have followed the Eighth Circuit's decision in *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017), which held that the free-choice-of-provider provision is not privately enforceable because it exists within a set of requirements for state Medicaid plans, *id.* at 1041. But South Carolina previously presented that same argument to this Court, S.C. Permanent Inj. Br. 28; S.C. Prelim. Inj. Br. 23, and this Court rejected it, *Baker*, 941 F.3d at 700. The Medicaid Act itself "foreclose[s]" that reasoning, *id.*; it instructs that a provision of the Act "is not to be deemed unenforceable because of its inclusion in a section of [the Act] . . . specifying the required contents of a State plan," 42 U.S.C. § 1320a-2.

*Talevski* did not change anything on that score. Indeed, the Court rejected a similar argument. The FNHRA provisions in *Talevski* exist within a set of requirements for state Medicaid plans and nursing facilities. 599 U.S. at 185. The nursing facility in *Talevski* argued that the provisions were not intended to benefit individual residents because they establish conditions with which facilities must abide. Pet. Br. at 45, *Talevski*, 2022 WL 2898343. The *Talevski* Court rejected that argument, explaining that a statute does not "fail[] to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights." 599 U.S. at 185. Here too, the free-choice-of-provider provision both secures

20

Medicaid beneficiaries' rights to the provider of their choice *and* places requirements on South Carolina.

South Carolina also argues (Br. 9) that the Court should adopt *Gillespie*'s reasoning that no Section 1983 remedy is available because there are other means for enforcing the free-choice-of-provider requirement. 867 F.3d at 1041. That is another argument that South Carolina made before, S.C. Permanent Inj. Br. 28-30, and this Court previously rejected, *Baker*, 941 F.3d at 698-99; *Kerr*, 27 F.4th at 958. This Court explained that Medicaid provides no "private remedy – either judicial or administrative – for patients seeking to vindicate their rights under the free-choice-of-provider provision." *Baker*, 941 F.3d at 698-99.

*Talevski* reinforced that holding as well. The *Talevski* Court rejected the argument that the presence of a "detailed enforcement regime" automatically precludes a Section 1983 remedy. 599 U.S. at 188. The relevant question, *Talevski* explained, is whether that remedial scheme is "*incompatible* with individual enforcement under § 1983." *Id.* (quoting *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 252 (2009)). *Talevski* thus held that a Section 1983 remedy can exist "alongside a detailed enforcement regime that also protects those interests." *Id.* at 188-89. Here, like in *Talevski*, there is no indication that enforcing the free-choice-of-provider provision via Section 1983 "would thwart the operation" of other enforcement mechanisms that Congress established in the Medicaid Act. *Id.* at 188.

21

Finally, the State repeats (Br. 12-13) its argument that the free-choice-of-provider provision lacks "clear rights-creating language." *See* S.C. Permanent Inj. Br. 27-30; S.C. Prelim. Inj. Br. 27-30. This Court squarely rejected that argument. It held that the free-choice-of-provider provision is "a prime example of the kind of 'rights-creating' language required to confer a personal right on a discrete class of persons." *Baker*, 941 F.3d at 697; *see Kerr*, 27 F.4th at 956. All three judges agreed that the provision is "clear and unambiguous" in conferring privately enforceable rights. *Kerr*, 27 F.4th at 957; *see id.* at 707 (Richardson, J., concurring). This was not a close call: The Court found it "difficult to imagine a clearer or more affirmative directive" than in the statute here. *Baker*, 941 F.3d at 694. And *Talevski* did not change the law on this point: Like this Court, it stated that a provision must use "clear rights-creating language." 599 U.S. at 186.

South Carolina argues (Br. 12) that the Medicaid provisions in *Talevski* contained the word "right," and the free-choice-of-provider provision does not. But nothing in *Talevski* suggests that a statute must contain the magic word "right" in order to unambiguously confer privately enforceable rights. The statute at issue here provides that the state's Medicaid plan "must" provide that "any individual eligible for medical assistance . . . may obtain such assistance" from any provider who is "qualified to perform the service or services required" and "who undertakes to provide him such services." 42 U.S.C. 1396a(a)(23)(A). As this Court explained, the provision's

22

"phrase 'any individual' is a prime example of the kind of 'rights-creating' language required to confer a personal right on a discrete class of persons." *Baker*, 941 F.3d at 697. The provision "has an 'unmistakable focus' on its intended class of beneficiaries" and adopts "as its benchmark whether the 'needs of any particular person have been satisfied.'" *Baker*, 941 F.3d at 697 (quoting *Gonzaga*, 536 U.S. at 284, 288); *see Kerr*, 27 F.4th at 955-56.

South Carolina is incorrect (Br. 13) that the free-choice-of-provider provision is like the statute at issue in *Gonzaga*. That statute prohibited the funding of educational institutions with certain policies or practices. *See Gonzaga*, 536 U.S. at 278-79 (citing 20 U.S.C. § 1232g(b)(1)). The statute lacked "rights-creating language," primarily directed the federal government's "distribution of public funds," and had "an aggregate, not individual, focus." *Id.* at 290. The opposite is true here. The free-choice-of-provider provision uses "'rights-creating' language" and has an "'unmistakable focus' . . . on its intended class of beneficiaries." *Baker*, 941 F.3d at 697 (quoting *Gonzaga*, 536 U.S. at 290).

The bottom line is that this Court has methodically and carefully applied the Supreme Court's teachings to answer the statutory-interpretation question at the heart of this case, and *Talevski* did not change the law in any relevant respect.

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,

Nicole A. Saharsky
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

Jennifer Sandman
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4909
jennifer.sandman@ppfa.org

M. Malissa Burnette
Kathleen McDaniel
BURNETTE, SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
Columbia, SC 29201
(803) 904-7913

*Counsel for Appellees Planned Parenthood South Atlantic and Julie Edwards*

Dated:  September 22, 2023

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Appellees certifies that this brief:

(i)     complies with the type-volume limitation of Fourth Circuit Rule 32(a) because it contains 5176 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(ii)     complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  September 22, 2023                    */s/ Nicole A. Saharsky*

25